FLAHERTY v. MAXWELL MOTOR CO.

1. LIBEL AND SLANDER — CORPORATIONS — PRINCIPAL AND AGENT— LIABILITY FOR ACTS OF SERVANTS.

The better doctrine at the present time seems to be that while a corporation may not ordinarily be liable for slanderous statements made by its servants, although in uttering the words the speaker was acting for the benefit of the corporation and within the scope of his duties, it may be held liable where the evidence affirmatively shows that the agent was directed or authorized to speak the words in question or that the defendant later ratified his action.[1]

2. SAME—RATIFICATION.

Nor was the fact that one of its servants or agents uttered the slanderous statements in the presence of its superintendent and in his office sufficient to render the defendant liable for the wrongful act; no inference could be drawn from this fact that the slander was authorized or ratified by the superintendent.

3. SAME—CORPORATIONS—SCOPE OF AUTHORITY—MASTER AND SERVANT.

The utterance of slanderous language, charging an

[1] As to liability of corporation for slander by an agent or employee, see notes in 21 L. R. A. (N. S.) 873, 9 L. R. A. (N. S.) 929.

employee with larceny, by the chief office man and head stockkeeper of a motor car corporation, who were subordinate servants of the defendant, was beyond the scope of their authority as such servants or agents.

Error to Wayne; Gage J., presiding. Submitted April 26, 1915. (Docket No. 142.) Decided June 14, 1915.

Case by Charles Flaherty against the Maxwell Motor Company for slander. Judgment for defendant on a verdict directed by the court. Plaintiff brings error. Affirmed.

*Dohany & Dohany*, for appellant.

*Pelton & McGee* and *Stevenson, Carpenter, Butzel & Backus*, for appellee.

McALVAY, J. Plaintiff, a minor, by his next friend brought suit against defendant, a corporation, in an action of trespass on the case for slander. Upon the trial of the case, after plaintiff had rested, counsel for defendant made a motion for a directed verdict in its behalf upon the ground that there was no evidence in the case to warrant the court in submitting the question of defendant's liability to the jury. This motion was granted, and a verdict of no cause of action was directed by the court in favor of defendant and against plaintiff. Plaintiff excepted to such direction of the court. Upon the verdict so directed a judgment was thereafter duly entered. The case is brought to this court for review by plaintiff who assigns the following error:

"That the court erred in directing a verdict in favor of defendant and against the plaintiff of no cause of action."

The following is the statement of facts made by the appellant:

"On and prior to the 27th day of March, 1913, plaintiff was in the employ of defendant as an assistant stockkeeper, and it was his duty to keep track of stock which came in and was given out to the different departments on requisition.

"On that date, or shortly afterwards, a magneto and several carburetors were stolen from defendant's plant, and in an effort to recover the same, defendant's chief office man, Mr. Homer L. Cousins, and defendant's chief stockkeeper, Mr. Harry Wallace, uttered and published the slanderous words which are made the basis of this action.

"At the conclusion of plaintiff's case the trial court directed a verdict of no cause of action on the ground that the plaintiff had failed to make a sufficient showing that the slanderous words were spoken by some authority of defendant corporation, and this action is made the basis of appellant's only assignment of error."

Counsel for defendant in their brief say:

"The statement of facts in the plaintiff's brief accurately presents the issue."

The speaking of the slanderous words relied on by plaintiff upon which he bases his right of recovery in this case which are claimed to have been uttered and published by the chief office man and chief stockkeeper of defendant company on March 28, 1913, as testified to by plaintiff, occurred as follows: An investigation had been started relative to some property which had been stolen from this plant. Plaintiff was called to the office of Mr. King, the superintendent of this plant, in the afternoon of that day, where he found Mr. King, Mr. Cousins, the chief office man, and two or three detectives. Mr. Cousins spoke to him first when he entered, telling him to sit down, and then said to him:

"You helped get that magneto and those carburetors out; you knew where they were all the time."

Plaintiff remained in Mr. King's office about ten

minutes. He says the detectives questioned him. He then went to the stockroom, where he was employed. Mr. Wallace, the chief stockkeeper of this plant, soon came in to see him. Plaintiff testified that at this time and place practically the same charges which Mr. Cousins had made were made against him by Mr. Wallace, who was near the door of the stockroom when he spoke and uttered these slanderous words in a loud voice in the hearing of defendant's employees.

Mr. King was general superintendent of this branch of the Maxwell Motor Company, known as the Sampson & Brush plant. He was superintendent over the manufactured parts of the automobile, over everything in general pertaining to the manufacture of the car. This plant is divided into several departments in which Cousins, Wallace, and plaintiff were employed in the capacities already mentioned. Plaintiff testified that Mr. King was present in his office at the time Mr. Cousins uttered the slanderous words charged by plaintiff. Mr. King, the superintendent, was examined as a witness, under the statute, in behalf of plaintiff, and no questions were asked him relative to the interview in his office on the occasion when Mr. Cousins is charged to have slandered the plaintiff, nor as to what part, if any, he heard of the conversation which occurred at that time between Mr. Cousins and plaintiff. He was the only witness besides plaintiff who testified in the case, and the only mention made of him in plaintiff's testimony is that he was present in the office and said but little.

Plaintiff says that he was called to the superintendent's office by one of the shop detectives, and it does not appear that the superintendent had any conversation with him while he was in his office. Plaintiff's contention is that the fact that Mr. Cousins uttered the slanderous words in the superintendent's office, where he had been requested to come, was sufficient

showing on his part to fix the liability for the utter-
ance of the slanderous words by Mr. Cousins upon
the defendant company.

The defendant contends:

"(1) The corporation is not liable for slander ut-
tered by its servants unless it expressly authorized
or subsequently ratified the utterance.

"(2) The alleged utterances of the slanderous words
were not within the scope of the authority of the
servants."

. The declaration charges that Mr. Wallace, the head
stockkeeper of the stockroom in which plaintiff was
employed, acting within the scope of his authority,
uttered the slanderous words as charged, and that
Mr. Cousins, acting with authority from defendant and
for and in its behalf, made these false charges.

The record does not show affirmatively that there
was any express authorization or ratification by the
corporation of the alleged slander, and the appellant
does not so contend in his brief. It is, however, urged
that the slander occurred in the presence of the gen-
eral manager of this plant in his office, and that the
words were uttered by Cousins, whose duty it was,
together with Wallace, to recover lost or stolen stock,
which plaintiff insists was a sufficient showing that the
slander was authorized and ratified. We do not under-
stand the foregoing to be the law applicable to slander
by a corporation; in other words, slander by a corpora-
tion cannot rest upon inference. The accepted doc-
trine is stated as follows:

"It was for a long time thought that a corporation
could not in any case be held civilly liable for a slander.
But at the present time the better doctrine would seem
to be that, while a corporation is not ordinarily liable
for a slander uttered by one of its agents, even though
in uttering such words the speaker was acting for the
benefit of the corporation and within the scope of the
duties of the agency, the corporation may be held liable
where it affirmatively appears that the agent was ex-

pressly directed or authorized by the corporation to speak the words in question." 18 Am. & Eng. Enc. Law (2d Ed.), p. 1059, citing *Behre* v. *Cash Register Co.*, 100 Ga. 213 (27 S. E. 986, 62 Am. St. Rep. 320).

In *Singer Manfg. Co.* v. *Taylor*, 150 Ala. 574 (43 South. 210, 9 L. R. A. [N. S.] 929, 124 Am. St. Rep. 90), the court, among other things, said:

"A corporation will not, it is submitted, be liable for any slander uttered by an officer, even though he be acting honestly for the benefit of the company and within the scope of his duties, unless it be proved that the corporation expressly ordered and directed that officer to say those very words; for a slander is the voluntary and tortious act of the speaker."

Our examination of the cases satisfies us that the great weight of the authorities holds that a corporation is not liable for slander uttered by its servants unless it affirmatively appears that the agent was expressly authorized to speak the words in question or the corporation subsequently ratified the utterance. The law relative to the subject is clearly stated in the authorities cited *supra*. Further citations are unnecessary.

There is no substantive proof in this case tending to show that defendant corporation authorized or approved or ratified the act of Mr. Cousins in uttering the particular slander charged. The evidence relative to the presence of Superintendent King in his office at the time the alleged slander was uttered is not only not sufficient under the authorities to fix liability upon the defendant corporation, but from it no inference can be drawn of any authority or ratification of the individual act of Mr. Cousins.

The words alleged to have been uttered either by Mr. Cousins or Mr. Wallace were not within the scope of their authority. They were subordinate servants of the corporation, employed, respectively, as chief office man and head stockkeeper, in one of its branches,

with limited powers and duties and could not render the corporation liable by uttering slanderous words. *Stewart Dry Goods Co.* v. *Heuchtker,* 148 Ky. 228 (146 S. W. 423).

There is a line of cases which holds that, where a special contractual relation exists between the plaintiff and defendant, recovery will be allowed for slander committed by a subordinate servant. Such are cases of common carriers in their relation to passengers, and are based upon a breach of duty arising out of the contract, whereby they are bound to protect passengers from insults, indignities, and personal violence. *Singer Manfg. Co.* v. *Taylor, supra.*

Our conclusion in this case is that, under the evidence, the circuit court was not in error in directing a verdict for the defendant.

The judgment is affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.