ROBERTSON *v.* NEW YORK LIFE INSURANCE CO.

1. TRIAL—SUMMARY JUDGMENT FOR ONE OF SEVERAL DEFENDANTS.
   In action by medical examiner against insurance company and various of its representatives for conspiracy to slander plaintiff, where the company was the only party which filed motion for, and obtained, a summary judgment, the case continued in the trial court against other defendants who had been served with process.

2. APPEAL AND ERROR—MOTION FOR SUMMARY JUDGMENT—DECISIVE QUESTION.
   On medical examiner's appeal in action for conspiracy to slander plaintiff in which defendant insurance company had interposed a motion for summary judgment, the decisive question is whether latter was entitled to a judgment as a matter of law without deciding any controverted issue of fact (Court Rule No. 30, § 7 [1933]).

3. CORPORATIONS—LIABILITY FOR SLANDER BY AGENTS.
   A corporation is not liable for slander uttered by its agents unless it affirmatively appears that they were expressly authorized to speak the words in question or the corporation subsequently ratified the utterance.

4. LIBEL AND SLANDER — CORPORATIONS — CONSPIRACY — SUMMARY JUDGMENT.
   In medical examiner's action against insurance company and various of its representatives for conspiracy to slander, summary judgment was properly entered for company where record shows no question of fact was presented regarding company's participation in conspiracy or its authorization or ratification of alleged slanderous statements (Court Rule No. 30, § 7 [1933]).

5. JUDGMENT—SUMMARY JUDGMENT—TORTS.
   Court rule authorizing entry of summary judgments applies to tort actions as well as to actions upon contract or judgment (Court Rule No. 30, § 7 [1933]).

---

Defamatory communication defined, see 3 Restatement, Torts, § 559.
Liability for defamatory communication by one agent to another agent of the same principal, see 3 Restatement, Torts, § 577, comment i.

6. DISCOVERY—DISCRETION OF COURT—CONSPIRACY TO SLANDER—REC-
ORD.

In record on plaintiff's appeal from order granting defendant
insurance company's motion for summary judgment in medical
examiner's action for conspiracy to slander brought against
the company and some of its officers and representatives, no
abuse of discretion by the trial court is found in not grant-
ing plaintiff's motion to take the depositions of several of the
defendants (Court Rule No. 41, § 1 [1933]).

7. CONSTITUTIONAL LAW—SUMMARY JUDGMENT—CONSPIRACY TO
SLANDER—DUE PROCESS.

Summary judgment for defendant insurance company in action
against it and some of its officers and representatives for
conspiracy to slander plaintiff medical examiner *held,* not to
deprive plaintiff of due process of law or of other constitu-
tional rights (Court Rule No. 30, § 7 [1933]).

Appeal from Wayne; Brennan (Vincent M.), J.
Submitted June 6, 1945. (Docket No. 6, Calendar
No. 42,951.) Decided June 29, 1945. Rehearing
denied September 5, 1945. Certiorari denied by Su-
preme Court of the United States January 7, 1946.

Case by Dr. Tom H. Robertson against New York
Life Insurance Company and others for damage
resulting from conspiracy to defame and slander.
Summary judgment for defendant New York Life
Insurance Company. Plaintiff appeals. Affirmed.

*John F. Jordan,* for plaintiff.

*Armstrong, Weadock, Essery & Helm (Richard G.
Eubank,* of counsel), for defendant New York Life
Insurance Company.

STARR, C. J. Plaintiff is a duly-licensed and
practicing physician in Detroit. Defendant New
York Life Insurance Company is a foreign corpora-
tion and maintains an office in Detroit. In March,
1937, the company placed plaintiff and his brother,
Dr. Stanley Robertson, on its list of approved med-

ical examiners, their work being the examination of applicants for life insurance. The company could remove them from its approved list at any time. Medical examinations were to be made for a specified fee. They continued as examiners until about November, 1941, when the company removed them from its approved list. Plaintiff and his brother then interviewed defendant Hicks, the supervisor of agencies for the company in Detroit, to ascertain the reason for their removal. Hicks informed them that they had been removed from the approved list because of complaints against them. Subsequently, plaintiff sent more than 100 letters and telegrams to officers, directors, and representatives of the company, seeking information as to the nature and source of the complaints.

In September, 1942, plaintiff began suit against the insurance company and defendants Hicks, Baron, Leitman, Slessinger, and Nutting, representatives of the company in Michigan, and defendants Pratt, Campbell, Fraser, and Harrison, who were officers or representatives in New York City. Process was served on the company and on defendants Hicks, Baron, Leitman, and Slessinger, but not on the other defendants. In his declaration and subsequent amendments thereto plaintiff alleged that defendants conspired to and did damage, defame, and slander him by wrongfully and maliciously publishing certain slanderous statements concerning his professional conduct as a medical examiner for the company. He asked for damages in the amount of $3,000,000. The company and the defendants who were served with process severally answered, denying the material allegations as to conspiracy and slander and denying his right to damages. Orders were entered for the taking of the depositions of

plaintiff and defendant Hicks under Court Rule No. 41, § 1 (1933). In November, 1943, the insurance company filed motion for a summary judgment, which stated in part:

"The grounds for this motion are that no slanderous statement has been made by any person authorized by New York Life Insurance Company so to do, and that there has been no ratification of any alleged slanderous statement by anyone authorized so to do on behalf of New York Life Insurance Company and that plaintiff herein does not know of any facts which constitute a cause of action against this defendant."

This motion for summary judgment was supported by affidavits to the effect that the company had not authorized any person to utter the words and statements complained of and had not ratified their utterance. Plaintiff filed objections to the motion, on the grounds that the pleadings raised issues of fact which could be determined only by a trial on the merits; and that he had had no reasonable opportunity to obtain and file affidavits and depositions controverting the facts alleged in the affidavits supporting said motion. The depositions of plaintiff and defendant Hicks were taken, and Hicks also testified at the hearing on said motion.

The trial court granted defendant company's motion for summary judgment, and on December 23, 1943, judgment was entered in its favor. Plaintiff's motion to vacate the summary judgment was denied, and he appeals. It should be noted that the individual defendants who were served with process did not move for summary judgment, and the case continues in the trial court as to them.

The principal question before us is whether or not, under Court Rule No. 30, § 7 (1933), defendant

company was "entitled to a judgment as a matter of law, without deciding any controverted issue of fact." Said court rule provides:

"SEC. 7. In any action at law, the defendant may, after issue is joined, move the court for entry of judgment in his favor upon a showing by affidavits or depositions filed in the cause that there is no question of fact to be determined by the court or jury, and that he is entitled to a judgment in his favor. Before judgment is entered, the plaintiff shall be given a reasonable opportunity to obtain and file affidavits and depositions controverting the facts set forth in the affidavits or depositions filed by the defendant. Either party shall be given the further opportunity to cross-examine witnesses whose affidavits have been filed or whose depositions have been taken without affording such opportunity of cross examination. Facts set forth in such affidavits or depositions, which it appears the witnesses could not testify to under the rules of evidence prescribed by law shall not be considered. If it appears to the court from such affidavits and depositions that the defendant is entitled to a judgment as a matter of law, without deciding any controverted issue of fact, the court shall enter such judgment, and the plaintiff may appeal therefrom. Both plaintiff and defendant are to have an equal right to a summary judgment, upon proper proofs."

In considering a summary judgment entered on defendant's motion, in the case of *American Employers' Ins. Co.* v. *H. G. Christman & Bros. Co.,* 284 Mich. 36, 40, we said:

"The decisive question before us on plaintiff's appeal is whether defendants were 'entitled to a judgment as a matter of law, without deciding any controverted issue of fact.' Court Rule No. 30, § 7 (1933). See, also, *Dempsey* v. *Langton,* 266 Mich. 47; *McDonald* v. *Staples,* 271 Mich. 590; and *Maser* v. *Gibbons,* 280 Mich. 621."

See, also, *Terre Haute Brewing Company, Inc.,* v. *Goldberg,* 291 Mich. 401; *Laughery* v. *County of Wayne,* 307 Mich. 316.

Therefore, we review the record for the purpose of determining whether or not there were issues of fact requiring consideration by a court or jury. Plaintiff's claim for damages is based on his allegation that defendants conspired to and did defame and slander him.   He testified that in November, 1941, defendant Hicks informed him and his brother that their names had been removed from the list of approved examiners, because complaints against them had been received at the New York office of the company.   Defendant Hicks testified regarding his interview with plaintiff and his brother as follows:

"He (plaintiff) seemed to be there for the purpose of finding out who was responsible for taking his name off the examining list, * * * and I told them that I was. * * * The next thing he * * * demanded to know why I had taken this action, and I explained that the company felt that they had the right to put a man on the list as an examiner, and take him off at will, and he pressed me as to * * * what reason they would have for doing it, and I told him that I did not know, but that I had been in New York a number of months before that, and while I was eating lunch with some of the officers of the company, one of the doctors, I believe it was Dr. Pratt, had stopped by the table * * * and in passing, mentioned that some complaint had come in regarding one of the Robertson brothers, and * * * it was * * * stated then that some woman had complained, but other than that, I knew nothing about it."

The law is established in this State that a corporation is not liable for slanderous statements uttered by its agents, unless it is affirmatively shown that the agent was expressly authorized to make such state-

ments or that the corporation ratified their utterance. In *Flaherty* v. *Maxwell Motor Co.,* 187 Mich. 62, 67, we said:

"Our examination of the cases satisfies us that the great weight of the authorities holds that a corporation is not liable for slander uttered by its servants unless it affirmatively appears that the agent was expressly authorized to speak the words in question or the corporation subsequently ratified the utterance."

Therefore, upon a trial on the merits, plaintiff could not recover damages against defendant company unless he affirmatively showed that the company either authorized or subsequently ratified the alleged slanderous statements. The question as to the validity of the summary judgment in the present case depends upon whether or not the pleadings, depositions, and testimony taken, presented a question of fact as to whether the company had authorized or later ratified the alleged statements. If an issue of fact was presented regarding such authorization or ratification, then the summary judgment was invalid. The record is convincing that no such issue of fact was presented. Plaintiff's testimony clearly indicates that there was no basis for his claim that the company was a party to the alleged conspiracy or that it authorized or ratified the alleged slanderous statements. He testified in part:

"I claim that the company itself was part of the conspiracy to get rid of me. They could discharge me at any minute they wanted to, but they can't discharge me with false accusations and smear my reputation. * * * I think the officials of the company slandered me. * * *
"Q. * * * Do you feel that the company is involved in it? * * *
"A. Yes, because they are covering it all up.

"*Q.*  Because they are not coming out and telling you names and dates and places you mean?

"*A.*  Absolutely.

"They are liable because they are covering it up, there is no reason why they shouldn't be liable.    *    *    *

"There were others besides Harry Hicks who were trying to get rid of me, or trying to slander me.    *    *    *

"They (agents) made complaints to me about the way I handled my cases, and they called me up and said they never had such rotten business, and that they never had such luck and that they wouldn't send me any more cases.    *    *    *

"*Q.*    *    *    *  The only person that ever said anything to you, insofar as you know, to anyone else, about the impropriety of you or your brother in making examinations in regard to applicants, was Mr. Hicks, and that was to you and your brother in Mr. Hicks' office in November of 1941?

"*A.*  Well, I don't know.  There was quite a few other people that seemed to find it out, but where they found it out I don't know.    *    *    *

"I don't know as I would remember any of their names.  I had an abscessed tooth for two or three weeks, so I just can't remember.    *    *    *

"*Q.*  And your only complaint there is that they (defendant company) didn't write back to you and let you know about the complaints?

"*A.*  That is right.    *    *    *

"*Q.*  Well, you have no evidence in this case that these men slandered you, though?

"*A.*  Except their refusal to clear me, and their covering up.

"*Q.*    *    *    *  We are clear about that, then. That is your only complaint?

"*A.*  Absolutely.

"*Q.*    *    *    *  And you feel that when they wouldn't answer your letters, that they were covering up?

"*A.* Yes, sir. * * *

"*Q.* But you have no evidence that these men, other than that, that these men ever slandered you or conspired against you?

"*A.* No, sir. * * *

"*Q.* Tell me, doctor, of your own personal knowledge who, connected with the New York Life Insurance Company, has conspired against you? * * *

"*A.* Well, I think that anybody that would cover up for a person is still aiding him in committing the crime. * * *

"*Q.* So it is because you think that the company is refusing to divulge the names of persons who made complaints, * * * that they are liable?

"*A.* Certainly I do, inasmuch as the libel and the remarks that have been passed have ruined a person's reputation. * * *

"*Q.* All right, but what words? Now, the only ones that have uttered words, that you know of of your own knowledge, is Mr. Hicks, is that correct?

"*A.* That is correct, as far as to me. * * *

"*Q.* That is the only one of which you have any proof?

"*A.* Absolutely.

"The company and other people in the company are liable because they will not tell me about whether any complaints were made, and if so, by whom; they are the ones that have the complaints, and why shouldn't they divulge them. * * *

"*Q.* And your belief is that because no one else connected with the company will disclose the nature of complaints, if any, that have been received, * * * that you feel that they are liable?

"*A.* I certainly do. * * *

"*Q.* And you have no other evidence except that?

"*A.* That is correct. * * *

"If the company covers up the dirt, they are liable, aren't they? It is all their officials that did it. That is the evidence I have, that the company's officials are a partnership in it. * * *

"I was told in September of 1941, that there was a frameup, that this fellow overheard the plot, and told me about it the 19th or 20th of September at my own office.   *   *   *

"Why should I tell you the name of that person, he would be bought off before the trial of the case, you know the more money the pocketbook holds the more weight it carries.  That is why I refuse to give the name, I know the company will buy the witness off, they have already started and tried to.   *   *   *

"The deposition which I gave on March 8th, the deposition that I heard Mr. Hicks give some time in March in this case, and the deposition which I have given here today, cover all of the facts upon which I rely to show that the company either authorized or ratified the slander or conspiracy complained of in my lawsuit, at the present time.   *   *   *

"I think I can acquire some more facts that will prove that the company authorized or ratified the acts complained.  But I have not tried at the present time.  I do not have those facts in my possession."

We conclude that the record presents no questions of fact as to whether or not defendant company was a party to the alleged conspiracy, or whether it authorized or ratified the alleged slanderous statements.  There being no questions of fact, the trial court properly concluded, as a matter of law, that the company could not be held liable and was entitled to a summary judgment.

Court Rule No. 30, § 7 (1933), under which the judgment in question was entered, applies to "any action at law" and, therefore, includes tort actions as well as actions upon contract or judgment. *Lomba* v. *General Motors Corp.,* 303 Mich. 556; *Union Investment Co.* v. *Weil,* 269 Mich. 32.

We find no abuse of discretion by the trial court in not granting plaintiff's motion to take the depositions of several of the defendants.  Court Rule No. 41, § 1 (1933) ; *Hallett* v. *Michigan Consolidated*

*Gas Co.,* 298 Mich. 582; *Magel* v. *Kulczynski,* 276 Mich. 424.

Under the facts and circumstances shown by the record, the granting of the summary judgment did not deprive plaintiff of due process of law or of other constitutional rights. *Peoples Wayne County Bank* v. *Wolverine Box Co.,* 250 Mich. 273 (69 A. L. R. 1024). In view of our conclusions, other questions presented do not require consideration.

The judgment for defendant New York Life Insurance Company is affirmed. It may recover costs of both courts.

NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.