POLEDNA *v.* BENDIX AVIATION CORPORATION.

1. LIBEL AND SLANDER—REPORT OF DISCHARGE OF EMPLOYEE TO EM-
PLOYMENT SECURITY COMMISSION—ABSOLUTE PRIVILEGE.

The report of the discharge of an employee, required by the
employment security act to be filed with the employment se-
curity commission, was granted an absolute privilege and was
properly found not to constitute a basis for action of libel
even though reason assigned for separation from employment
included "theft" (CLS 1956, §§ 421.11, 421.13).

2. SAME—THEFT—EVIDENCE.

Jury's verdict for plaintiff in action for slander because of dis-
charge from employment on ground of theft, orally uttered
in the presence of others, must be regarded as a finding by
the jury that the charge of theft was false under record
supporting such finding.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 33 Am Jur, Libel and Slander § 142.
Libel and slander: privilege applicable to judicial proceedings
as extending to administrative proceedings.   45 ALR2d 1296.
[2] 33 Am Jur, Libel and Slander § 117.
[3] 33 Am Jur, Libel and Slander § 31.
[4] 2 Am Jur, Appeal and Error § 153.
[5] 33 Am Jur, Libel and Slander §§ 200, 207.
[7, 8] 20 Am Jur, Evidence § 1189.
[9] 13 Am Jur, Corporations § 1127.
[10] 13 Am Jur, Corporations § 1127.
Libel or slander of another employee as within scope of em-
ployee's authority.   29 ALR 225.
[11] 3 Am Jur, Appeal and Error § 1097.
[12] 33 Am Jur, Libel and Slander § 202.
[13] 33 Am Jur, Libel and Slander § 272.
[14] 33 Am Jur, Libel and Slander § 297.
[15–17] 33 Am Jur, Libel and Slander §§ 126, 303.
Libel and slander: communication to defendant's employee or
business associate as privileged.   166 ALR 114.
[18] 33 Am Jur, Libel and Slander § 202.
[19, 20] 15 Am Jur, Damages § 185.
[21] 33 Am Jur, Libel and Slander §§ 202, 305.
[22] 14 Am Jur, Costs § 97.

3. SAME—FALSE CHARGE OF THEFT.

A false charge of theft is slanderous and actionable *per se.*

4. SAME—DAMAGES—INSTRUCTIONS—CROSS APPEAL.

Plaintiff in action for slander who did not cross appeal as to charge of the court ruling out general damages and charging only on special or punitive damage would not be in a position to complain of error in such charge to the jury (CL 1948, §§ 620.21, 620.22).

5. SAME—THEFT—SPECIAL DAMAGES—EVIDENCE—PROXIMATE CAUSE.

Plaintiff *held,* not entitled to portion of verdict in action for slander, designated by jury as "past damage," which could only be viewed as special damages under the charge and record, where there was no proof that charge of theft which was overheard by others than plaintiff and defendant personnel manager for defendant corporation was overheard by, or conveyed to, people from whom plaintiff subsequently sought work, there being no "selective application" as to any of the reasons why plaintiff was unable to obtain employment.

6. WORDS AND PHRASES—CONJECTURE.

A conjecture, as a theory of causation, is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference.

7. NEGLIGENCE—PROXIMATE CAUSE—CONJECTURE.

There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only.

8. SAME—PROXIMATE CAUSE.

Evidence pointing to 1 theory of causation, indicating a logical sequence of cause and effect, presents a juridicial basis for determining causation, notwithstanding the existence of other plausible theories with or without support in the evidence.

9. LIBEL AND SLANDER—AGENT OF CORPORATION.

A corporation may be held liable for slander uttered by an agent while in the discharge of his duty as agent and in relation to the matter about which his duty as agent permits or requires him to act, in the same way and to the same extent as an individual could be held liable for the same slander.

10. SAME—INSTRUCTIONS—AGENT OF CORPORATION.

Jury was properly instructed that defendant corporation whose personnel manager, the other defendant, discharged plaintiff

for sleeping on the job and for theft by oral statements made in the presence of others was responsible for any act of the personnel manager in plaintiff's action for slander.

11. APPEAL AND ERROR—INSTRUCTIONS.

The charge to the jury must be considered in its entirety when viewed by the Supreme Court for claimed errors therein.

12. LIBEL AND SLANDER—MALICE—PUNITIVE DAMAGES.

Punitive damages may be awarded to plaintiff in action for slander, where he has proved malice by a preponderance of the evidence.

13. SAME—FINDING OF MALICE—FALSE ACCUSATION OF THEFT—EVIDENCE—INSTRUCTIONS.

Jury finding of malice on part of defendant personnel manager of corporate defendant in falsely accusing plaintiff of theft when discharging him from employment *held*, supported by ample facts as to which adequate charge by the trial court had been given.

14. SAME—MALICE—INSTRUCTIONS.

Issue of malice in former employee's action for slander uttered in presence of others by defendant personnel manager of corporate defendant was properly left to jury, where both plaintiff's and defendants' versions were presented to jury under a charge that was adequate on the subject of malice involved in the case.

15. SAME—INSTRUCTION—QUALIFIED PRIVILEGE.

Charge to jury in slander action by former employee whose discharge from employment of defendant corporation by defendant personnel manager was accompanied by a false accusation of theft, which set forth that a conditional privilege adhered between the personnel manager and other employees who had a mutual interest in the hiring and discharging of employees, gave defendants the basic protection to which they were entitled.

16. SAME — QUALIFIED PRIVILEGE — MUTUALITY OF INTEREST — EVIDENCE.

Inclusion of foreman within group of defendant corporation's employees who had a common duty or interest in hiring and discharge of employees but excluding "fellow general employees" and the plant guard from those as to whom conditional privilege existed, incident to discharge of · plaintiff accompanied by false accusation of theft by defendant personnel manager, *held*, not error in judge's charge to jury in

former employee's action for slander, there being no proof of mutuality of interest as to such excluded employees.

17. SAME—QUALIFIED PRIVILEGE—PLANT GUARD—DISCHARGE OF EMPLOYEE—FALSE ACCUSATION OF THEFT.

Fact that plant guard could be considered as having a corresponding interest or duty in the discharge of an employee by defendant corporation's personnel manager, also a defendant, accompanied by a false accusation of theft, and trial court in charge to jury in former employee's action for slander excluded the guard from among those to whom conditional privilege attached did not result in error prejudicial to defendants, where there was a clear-cut finding of malice upon the part of the personnel manager who had uttered the slanderous statement.

18. SAME—PUNITIVE DAMAGES—STATUTES.

Punitive damages in an action for slander are authorized by statute (CL 1948, §§ 620.21–620.23).

19. DAMAGES—INTENTIONAL TORT—INJURY TO FEELINGS.

Damages for injuries to feelings are allowed in an action of tort consisting of an intentional act and depend in amount very much upon the degree of fault evinced by all the circumstances.

20. SAME—INJURY TO FEELINGS—MALICE.

Damages allowable for injured feelings, shame, mental anxiety, insulted honor, and suffering and indignation consequent on the wrong may be increased or aggravated by vindictive feelings, or degree of malice, as the injury is much more serious where such elements, or either of them, are shown to exist.

21. LIBEL AND SLANDER—PUNITIVE DAMAGES—INSTRUCTIONS.

Trial court's instruction relative to punitive damages in slander action requiring plaintiff to prove malice and actual damage but setting forth that the damages also must be reasonable, and while they could be given by way of punishment "should not be vindictive in amount" *held*, not reversible error (CL 1948, §§ 620.21–620.23).

22. COSTS—FAILURE OF EITHER PARTY TO PREVAIL ENTIRELY.

No costs are allowed on appeal in action for slander that was defamation *per se*, where verdict and judgment for plaintiff was reversed as to special damages but allowed to stand as to damages for injury to feelings, or punitive damages, since neither party has prevailed entirely (CL 1948, §§ 620.21–620.23).

Appeal from Berrien; Hadsell (Philip A.), J. Submitted January 7, 1960. (Docket No. 26, Calendar No. 47,820.) Decided June 6, 1960.

Case by Robert Poledna against Bendix Aviation Corporation and Walter Bare for damages arising from libel and slander in connection with discharge from employment. Verdict and judgment for plaintiff. Defendants appeal. Modified and affirmed.

*Donald J. Dick* and *Robert S. Feldman* (*Henry W. Gleiss,* of counsel), for plaintiff.

*Alexander, Cholette, Buchanan, Perkins & Conklin* (*Don V. Souter,* of counsel), for defendants.

EDWARDS, J. Plaintiff Robert Poledna brought a libel and slander action against defendants Bendix Aviation Corporation and Walter Bare for certain allegations of theft made against him. After trial before Berrien county circuit court, the jury returned a verdict of $10,000 "past damage" and $2,500 "punitive" damage. The trial judge denied motions for judgment *non obstante veredicto* and new trial, and entered judgment.

Defendants appeal, claiming various errors in relation to the judge's charge, that the jury award of damages was not supported by any testimony, and that defendant corporation may not be held responsible for slander by an employee. There is no cross appeal.

The action was occasioned by the circumstances of plaintiff's discharge from the employment of defendant Bendix Aviation Corporation by defendant Walter Bare, at that time the employment manager for Bendix' plant at St. Joseph, Michigan. Plaintiff, then 18 years old, had been hired at Bendix in March of 1953. He was discharged at about 10

o'clock in the morning of August 12, 1953, for "sleeping on the job and theft." Suit was started by summons January 25, 1957, within 1 year after plaintiff became 21.

There is considerable dispute in this record about the events which led to the discharge in 1953. Plaintiff's version of the episode was that he was called to the personnel office on the morning in question and told by defendant Bare that there had been complaints of sleeping on the job made against him, and that he was fired. Plaintiff claimed that he then asserted that the contract called for a 3-day lay-off for the offense named, rather than discharge.

Plaintiff testified that Bare responded to this by saying, "Well, if you want to fight it you go on back to work and I will find some way to get you out of here today." Plaintiff claimed he went back to work and then was recalled to the personnel office. He describes the events which followed his approaching the office in the following testimony:

"*A.* Well, as I started up there I took my apron off again and rolled the rags up in it. I believe I had a wrench in my hand and a screwdriver in my pocket, and I got just about to the time clock, or maybe I had gone past it, and Mr. Bare stepped out of that hallway there and asked me where I was going. I told him I was going into his office.

"*Q.* This spot that you are describing then is the time clock right about here, is that right (indicating)?

"*A.* Yes, sir.

"*Q.* Do you have any idea how far it is from that entrance down here?

"*A.* Oh, I would say between 10 and 15 feet.

"*Q.* But approximately the same distance it is from this corner of the office to the guard's desk?

"*A.* Approximately, yes.

"*Q.* So as you came he met you at about this point?

"*A.* That's right.

"*Q.* Did it appear that he came from around this corner?

"*A.* Yes.

"*Q.* What did he say, if anything?

"*A.* He says, 'Where are you going?' I said 'I'm going into your office,' and he said, 'Well, you were trying to leave with your tools,' and I told him I wasn't trying to leave with them. He says, 'I have no alternative but to fire you for theft.' "

The tools referred to were small hand tools which plaintiff was required to use on his job and which he had checked out of the plant tool crib.

Defendant Bare's version of the episode is substantially different. He testified to calling plaintiff to his office and notifying him of the sleeping on the job complaint, and that "I am going to have to let you go." He also claimed that he then offered to let plaintiff quit rather than have a discharge for sleeping on the job on his record, and that plaintiff accepted the offer and "cleared with the tool crib." Bare claimed that plaintiff left to see his steward, and later came back to the vicinity of the employment office and got into an argument with his foreman. Thereupon, Bare went from the office into the hallway and told plaintiff to leave. As plaintiff started to leave, Bare testified that he noticed his shop apron rolled up under his arm and called him back. His testimony continued:

"*A.* I said, 'What have you got in that apron?' He said, 'Nothing, Mr. Bare.' Then I said, 'You don't mind opening it, do you?' He had a dazed look.

"*Q.* Who opened the apron?

"*A.* I did. We walked over to the guard's desk and I said, 'Let me have it.' He laid it on the guard's desk. I opened it, and there were shop rags and tools in there.

"*Q.* His tools were inside the apron?

"*A.* Yes.

"*Q.* What happened then?

"*A.* I said, 'Now I have got no alternative. It's not a quit. You are fired, and you are fired for sleeping on the job and for theft.'"

No police complaint or criminal charges were ever initiated in the matter.

It is undisputed that at the time of the discharge there were other employees in the immediate vicinity, and that news of plaintiff's discharge for theft was related in the plant. Defendant Bendix subsequently filed a written report on the discharge with the Michigan employment security commission (keeping a file copy itself), relating the cause of his discharge as sleeping on the job and theft. This report was required by statute (CLS 1956, § 421.13 [Stat Ann 1959 Cum Supp § 17.513]).[*] Another section of the same statute (CLS 1956, § 421.11 [Stat Ann 1953 Cum Supp § 17.511]) granted an absolute privilege to the report.

No other publications of the claimed libel or slander were pleaded or proved. The trial judge charged the jury that there was "no question of libel involved in this case," and submitted the case on plaintiff's claim of slander under the disputed facts which we have detailed.

On the question of damages, plaintiff testified to considerable difficulty in securing employment in the years which followed his discharge at Bendix. In several instances he testified to being interviewed and refused employment without any explanation, and in one instance the same Bendix plant started to hire him but found his previous record and refused to do so. A summary of wage figures indicated that for the subsequent 5 years he had made approximately $2,000 less per year than he would have made

---

[*] See, also generally, 1954 State Administrative Code, p 4810, § R 421.205.—Reporter.

if he had continued in full-time employment at Bendix. There is no testimony, however, which directly ties the job refusals testified to by plaintiff to the claimed slander with which we are concerned on this appeal.

Appellants' claims of error are directed first at the lack of proof of causal relationship between plaintiff's proofs as to his subsequent employment difficulties and the claimed slander. Secondarily, appellants claim that the court erred in his charge by instructing the jury that defendant corporation was responsible for the acts of its personnel officer, Bare. Finally, appellants object to the judge's charge (or failure to charge as requested) on questions of qualified privilege, punitive damages and malice.

The jury verdict on this record must be read as a finding that the charge of theft was false. The record offers testimony from which they could have made this finding. Further, the charge of theft, if false, is certainly actionable *per se. Bacon* v. *Michigan Central R. Co.,* 55 Mich 224 (54 Am Rep 372); *Schattler* v. *Daily Herald Co.,* 162 Mich 115. The trial judge, however, ruled out general damages in his charge and charged only on special and punitive damage. This may well have been error (See CL 1948, § 620.21 [Stat Ann § 27.1371]). But, as we have mentioned, plaintiff brings no cross appeal as to this charge.

Ten thousand dollars of the jury award was made in terms of "past damage." Under the charge and this record, this $10,000 portion of the verdict can only be viewed as special damages. The only publication of claimed libel or slander which was pleaded, proved, or submitted to the jury was represented by the previously quoted words of defendant Bare, spoken in the hallway outside the employment office. There is testimony from which it can be inferred that the charge of theft contained therein was overheard

by other employees of the company who had no responsibility as to personnel matters. But there is not a line of testimony which establishes that this statement was heard by (or ever conveyed to) any of those from whom plaintiff subsequently sought work. Appellee suggests that we indulge an inference of causal relationship from the facts (1) that the slander happened; and (2) that plaintiff subsequently had difficulty in procuring desirable employment. Much as we recognize the difficulty of proof confronting plaintiff, we are forced to conclude that the $10,000 "past damage" figure contained in the jury award was speculation on speculation. Neither the jury nor we have any way of knowing what role in his subsequent employment difficulties was played by the unavailability of jobs, the lack of skills on the part of plaintiff, the record of his discharge for sleeping, his own references to the discharge, or the report of the theft charge made to the Michigan employment security commission which by statute was granted absolute privilege.

In *Kaminski v. Grand Trunk Western R. Co.*, 347 Mich 417, 422, this Court adopted the following definition of "conjecture":

"As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."

We are totally unable to find evidence with "selective application" to appellants' theory of the quoted slander as the source of his trouble.

For the reasons we have given, we feel constrained to hold that that portion of the jury award entitled "past damage" must be vacated.

The next of appellants' issues pertains to the claim that defendant corporation is not liable for the actions of defendant Bare. In support of this contention, they cite *Robertson* v. *New York Life Ins. Co.,* 312 Mich 92, and *Flaherty* v. *Maxwell Motor Co.,* 187 Mich 62. In this latter case, p 67, the Court said:

"Our examination of the cases satisfies us that the great weight of the authorities holds that a corporation is not liable for slander uttered by its servants unless it affirmatively appears that the agent was expressly authorized to speak the words in question or the corporation subsequently ratified the utterance."

The facts in our current record leave no doubt that Bare was functioning in his official capacity as employment manager of defendant corporation on the occasion of the slanderous utterance. The trial judge's charge included these words:

"And by the way, the defendant, Bendix Aviation Corporation, is responsible for any act of its personnel officer, who is the other defendant, Walter Bare, in this case."

Whatever the state of the law of libel and slander when *Flaherty* was decided, it seems apparent that the trial judge's charge comes far closer to representing the majority rule today.

"There is no longer any doubt that a corporation may be held liable for slander uttered by an agent while in the discharge of his duty as agent and in relation to the matter about which his duty as agent

permits or requires him to act, in the same way and to the same extent as an individual could be held liable for the same slander." *Priest* v. *Central States Fire Ins. Co.* (1928), 223 Mo App 122, 124 (9 SW2d 543).

See, also, *Johnson* v. *Life Insurance Company of Georgia*, 227 SC 351 (88 SE2d 260, 55 ALR2d 813); *Courtney* v. *American Railway Express Co.*, 120 SC 511 (113 SE 332, 24 ALR 128).

10 Fletcher's Cyclopedia Corporations (Perm ed), § 4888, pp 402, 403, says:

"The doctrine of nonliability based on the proposition that there can be no agency in slander has long been exploded."

See, also, 55 ALR2d 828.

We approve the charge of the trial judge on this issue and overrule any language in the *Flaherty* and *Robertson Cases, supra,* which conflicts with the views expressed herein.

The balance of appellants' objections pertain to the judge's charge. Reading it as a whole, we find rather less to criticize than appellants do by segregating separate sentences. Thus we believe that the trial judge correctly left the issue of malice to the jury:

"Now, if you find that the plaintiff has proved by a preponderance of the evidence that there was malice present * * * then punitive damages may be awarded."

See *Bolton* v. *Walker,* 197 Mich 699 (Ann Cas 1918E, 1007); *Bostetter* v. *Kirsch Company,* 319 Mich 547; *Timmis* v. *Bennett,* 352 Mich 355.

He did, however, fail to offer any definition of malice except in terms of the particular case:

"Now, in this case there is no point in the court defining malice. The only evidence of malice is con-

tained in the statement of the plaintiff that the defendant, Bare, said that—and I am not trying to quote verbatim, but the general idea—'If I can't discharge you because of sleeping on the job, I will figure out another reason for doing it before the day is over.' That would be malicious, if true."

The definition in these terms was certainly simple and relevant. And much as we have pondered over it, we cannot conceive of a nonmalicious construction which may be placed upon plaintiff's version of Bare's statements and conduct. The real dispute was over whether plaintiff's or defendant Bare's version of what happened was accurate. This, the trial judge submitted to the jury in his charge as to punitive damages, and the jury by the punitive damage award obviously found that plaintiff was telling the truth.

We believe the trial judge's charge as to malice was adequate, and there are ample facts to support the jury finding that the slander was maliciously uttered.

This holding has a direct bearing, also, upon appellants' issues as to qualified privilege. The trial judge did charge that conditional privilege adhered "between the employees of the defendant corporation here, if they [the statements] were made to other employees of the defendant who had a mutual interest in the employment—in other words, the hiring and discharging of employees."

While the charge at this point is hardly a work of art, it was obviously dictated from the bench and we believe it gave defendants the basic protection to which they were entitled.

In *Lawrence* v. *Fox,* 357 Mich 134, 144, this Court recently dealt with this same problem, holding:

"In short, at this point 2 questions are presented. The first is whether or not the occasion upon which

the words were spoken was a privileged occasion. This determination is for the court and the burden of proof is upon the defendant asserting the privilege."

The charge specifically included the foreman within the group of defendant corporation's employees who had a common duty or interest in hiring and discharge of employees. On the record before him, however, the trial judge specifically excluded "fellow general employees" and the plant guard. Considering that defendants had the burden of proof of establishing the conditional privilege, we find no error as to exclusion of the "fellow general employees." As to these employees, we find no proof of mutuality of interest.

On the other hand, on this record, the guard could be considered to have "a corresponding interest or duty" (*Bostetter* v. *Kirsch Company,* 319 Mich 547, 557), and hence it was error to exclude him from those entitled to hear the statement without destruction of the conditional privilege. We cannot, however, consider such error prejudicial to defendants. The value of the conditional privilege to defendants is that it requires plaintiff to prove not only the falsity of the statement but, in addition, that it was made with malice. *Van Vliet* v. *Vander Naald,* 290 Mich 365; *Timmis* v. *Bennett, supra; Lawrence* v. *Fox, supra.* As we have noted, there is a clear-cut finding of malice in this case.

The last issue of any substance pertains to the trial judge's charge as to punitive damages. Such damages are authorized by statute (CL 1948, §§ 620.21, 620.22, 620.23 [Stat Ann §§ 27.1371, 27.1372, 27-.1373]).

It may be noted that the first of these sections of the statute refers to damages to "feelings." This last term appears to be equated with "exemplary or

punitive damages" by the third section cited (dealing with retraction of libel).

The charge objected to was as follows:

"If you find that the plaintiff has proved by a preponderance of the evidence that there was malice present in this matter, then punitive damages may be awarded the plaintiff by way of punishment for their recklessness or serious and dangerous misconduct, in addition to actual damage. In order to find punitive damage you have to find that there was actual damage.

"There is no mathematical rule of thumb that the court can give you in connection with the damages that you should allow. * * * They are, of course, to be *reasonable,* and while they may be, as I have previously stated, given in the way of punishment, *they should not be vindictive in amount."* (Emphasis supplied.)

We note the cases upon which appellants rely in arguing that this language constitutes reversible error. *Hink* v. *Sherman,* 164 Mich 352; *Boydan* v. *Haberstumpf,* 129 Mich 137. These cases were not libel or slander cases. They were cases brought under the dramshop act* which omitted any specific reference to "punitive damages" as referred to above.

In the classic libel action of *Scripps* v *Reilly,* 38 Mich 10, 23, 24, this Court gave this description of damages to feelings:

"3. Damages for injuries to feelings are only allowed in those torts which consist of some voluntary act or very gross neglect, and depend in amount very much upon the degree of fault evinced by all the circumstances.

---

* At the time, CL 1897, §§ 5389, 5399. See, currently, CLS 1956, § 436.22 *et seq.,* as amended by PA 1958, No 152 (Stat Ann 1957 Rev and Stat Ann 1959 Cum Supp § 18.993 *et seq.*).—Reporter.

"4. Where the tort consists of some voluntary act, but no element of malice, carelessness or gross negligence, is shown to have existed, but that the wrong was done in spite of proper precaution, the damages to be awarded on account of injured feelings, will be reduced to such sum as must inevitably have resulted from the wrong itself.

"5. Where, however, the elements exist in a case, entitling a party to recover damages for injured feelings, the amount to be allowed for shame, mental anxiety, insulted honor, and suffering and indignation consequent on the wrong, may be increased or aggravated by the vindictive feelings, or the degree of malice, recklessness, gross carelessness or negligence of the defendant, as the injury is much more serious where these elements, or either of them, are shown to have existed.

"6. This increase of damages dependent upon the conduct of the defendant must be considered in this State as actual damages, although usually spoken of as exemplary, vindictive or punitory, and the amount thereof to be recovered, where recoverable at all, as they are incapable of ascertainment by any other known rule, must rest in the fair and deliberate judgment and discretion of the jury acting upon their own sense of justice in view of all the circumstances, both mitigating and aggravating, appearing in the case, and which can fairly be said to give color to or characterize the act, aided, however, by such instructions from the court as will tend to prevent the allowance of damages merely fanciful, or so remote as not fairly resulting from the injury."

See, also, *Welch* v. *Ware,* 32 Mich 77; *Dalman* v. *Koning,* 54 Mich 320; *Ross* v. *Leggett,* 61 Mich 445 (1 Am St Rep 608).

We believe that the basic objective of this classification of damages is designed rather to make the injured party whole than to punish the wrongdoer. But where, as here, the language objected to "by way of punishment" is offset by the admonition that the

damages "should not be vindictive in amount," we find no reversible error.

For the reasons we have given, no proof of special damages is to be found in this record and that portion of the jury award must be vacated. However, where, as here, the defamation is slanderous *per se* (*Bacon v. Michigan Central R. Co., supra*), damages for injury to feelings, otherwise called exemplary or punitive damages, may be found in the absence of damages of a pecuniary nature. *Cribbs* v. *Yore,* 119 Mich 237; *Newman* v. *Stein,* 75 Mich 402 (13 Am St Rep 447); *Meyers* v. *Fort,* 344 Mich 312; 3 Restatement, Torts, § 570.

Modified and affirmed. No costs, neither party having prevailed entirely.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.