Robert JONES and Gwendolyn Jones,
husband and wife, Plaintiffs-
Appellees,

v.

SEARS, ROEBUCK & COMPANY,
Defendant-Appellant.

No. 71–1674.

United States Court of Appeals,
Sixth Circuit.

April 28, 1972.

David C. Coey, Lansing, Mich. (Foster, Lindemer, Swift & Collins, Philip T. Carter, Lansing, Mich., on the brief), for appellant.

Thomas Max Anderson, Lansing, Mich. (Church, Wyble, Kristelis & Van Duzer, by J. Richard Robinson, Lansing, Mich., on the brief), for appellees.

Before WEICK, EDWARDS and PECK, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant in this diversity case appeals from judgments entered in favor of plaintiffs on their actions for slander and damages resulting therefrom in the total sum of $12,905.[1]

Appellee had been a clerical employee of defendant's store in Lansing, Michigan, for four and one-half years. In March of 1969 she bought a used manual typewriter from Sears for $20 for her husband to use in connection with his night school classes. She testified that the purchase had been unsatisfactory, and subsequently she saw another used typewriter available for sale in the same department. She inquired of a salesman named Osterhouse and was told that the price was $20. Plaintiff then asked a fellow employee to go to the Typewriter Department and look at the typewriter. Plaintiff testified that she thought that the typewriter needed repair because it did not have a carriage return lever and she had it sent to the Sears Customer Service Department for repair. Customer Service then advised her by phone that it did not need repair. She thereupon went to the Typewriter Department, paid $20.80 for the typewriter, and was issued a sales receipt. Subsequently she received a call from Customer Service and went there for instructions from the Sears repairman in the use of the typewriter. Thereafter she asked a fellow employee to go to Customer Service and bring the typewriter back to her department, where it was placed in a partially empty stock drawer.

One of the clerical employees of the Typewriter Department came to her department and told her, "I want the typewriter back that I sold you. I didn't sell you an electric typewriter, I sold you a manual. You stole it." Plaintiff denied this. Then the manager of the Typewriter Department came to plaintiff's department and said, "Do you realize you have boughten (sic) a $200 typewriter for $20?" He then left plaintiff's department, saying he would have to find out what to do about the matter. Thereupon several other Sears' employees came to plaintiff's department and the sequence of events, as described in plaintiff's testimony, followed:

Q. Then what else happened?

A. Then Tom from customer service came over.

Q. Do you know what his last name is?

A. No.

Q. Is it Tom Jury?

A. I just knew he was Tom.

Q. He works in customer service, you remember that?

A. Yes.

Q. He came over to your department?

A. Yes.

Q. Was he by himself or someone else with him?

A. He was by himself.

Q. And what did he say?

A. He said, "I want the typewriter back that you stole."

\*     \*     \*     \*     \*     \*

Q. (Mr. Anderson): Now, Mrs. Jones, where did this conversation take place?

A. It was in my department.

\*     \*     \*     \*     \*     \*

---

[1]. Judgments were entered in favor of Gwendolyn Jones for $10,000 actual and $1,000 punitive damages and in favor of her husband for $905 in medical expenses and $1,000 for loss of consortium.

Q. Were there other employees in the department?

A. Yes.

Q. Who was there that you remember?

A. Jan Bruning, Marion Paulino, Tom Schmidt and I don't know who all.

Q. Were there customers around this area?

A. There was customers around, yes.

Q. Were the customers in the area of where this conversation was taking place?

A. Some of the sales girls were waiting on customers.

Q. Now, let's go back to the time that the man from customer service and Mr. McIntyre came down. Now, do you remember who started that conversation? Was it Mr. McIntyre or the man from customer service?

A. The man from customer service came down, came over from customer service.

Q. And what did he say to you?

A. He said, "I want the typewriter back that you stole."

Q. And what did you say?

A. I said, "I didn't steal it. I paid for it."

Q. Did he say anything else?

A. He said, "You did. You did steal it." And the Tom from the typewriter department said, "Yeah, she did steal it. Go call the detectives."

Q. And the man you say from the typewriter department said, "Call the detectives." Is he the man that rang up the ticket?

A. Yes.

Q. Then what happened, Mrs. Jones?

A. Then he say, "She won't get out of the store with it." And the Tom from customer service went over to the phone to call.

Q. Went to the phone; is that right?

A. (Nods)

Q. Then what happened?

A. And then I was crying. And then all of sudden the Tom from customer service and the Tom from the typewriter department started going through and pulling open the drawers.

Q. Pulling the drawers open?

A. (Nods)

Q. What were they doing?

A. They was looking through them and slamming them.

Q. And they were opening and slamming them shut?

A. Yes.

Q. Who was doing this?

A. Tom from the typewriter department and Tom from customer service.

Q. All right. Do you know how many drawers they went through?

A. No.

Q. What were you doing at this time?

A. I was standing there crying.

Q. Do you remember seeing any other people around?

A. Jan came up to me and she said, "Don't cry because I know you didn't steal it." And the man from the boy's department came over and asked Tom what they were doing.

Q. And did they say anything to him?

A. They said, "We are looking for a typewriter that was stolen."

\*   \*   \*   \*   \*   \*

Q. Then what did you do?

A. I went off the floor and went back to see Mr. Stewart in the personnel office.

Defendant admitted at trial that plaintiff had been told that the typewriter in question was priced at $20 and it is undisputed that she had received a sales slip of payment of this price. It is also undisputed that the employee who quoted that price to her was promptly discharged.

The settled rule in Michigan, which of course in this diversity case is the law to be applied, is that charges of theft if false are per se actionable. Bacon v. Michigan Central R.R., (1884), 55 Mich. 224, 21 N.W. 324, 54 Am.Rep. 372; Schattler v. Daily Herald Co., 162 Mich. 115, 127 N.W. 42 (1910); Poledna v. Bendix Aviation Corp., 360 Mich. 129, 103 N.W.2d 789 (1960).

Appellant does not dispute this general proposition nor does it contend that plaintiff's proofs fail to make out a jury question as to slander. Appellant's primary reliance is upon the proposition that its employees who were alleged to have uttered slanderous words were not legally agents of Sears, Roebuck at the time of the alleged tortious events within the Michigan rule of law pertaining to corporate responsibility for slander. This rule, as first established in Poledna v. Bendix Aviation Corp., *supra,* is as follows:

> "There is no longer any doubt that a corporation may be held liable for slander uttered by an agent while in the discharge of his duty as agent, and in relation to the matter about which his duty as agent permits or requires him to act, in the same way and to the same extent as an individual could be held liable for the same slander." Poledna v. Bendix Aviation Corp., *supra* at 139–140, 103 N.W.2d at 793.

*See also* Grist v. Upjohn Co., 368 Mich. 578, 118 N.W.2d 985 (1962).

The District Judge in submitting this case to the jury charged the jury in the identical language from the *Poledna* case just quoted above, and the general verdict of the jury in this case must be taken as an affirmative finding that the managerial and sales personnel involved in the charges against plaintiff were at the time acting as corporate agents within the *Poledna* rule.

This, however, does not dispose of appellant's contentions in relation to the corporate agency issue. In its second stated ground for reversal it claims error in the District Judge's refusal to admit in evidence a portion of appellant's security manual which provided:

> No one except the Manager, Assistant Manager, Operating Superintendent, Security Manager or member of the security staff shall question or detain a shoplifter. Should a situation arise wherein the salesperson has observed a theft and conditions are such that it is impossible and impracticable to summon one of the store executives, the sales person may courteously say to the individual, "I'll be happy to wrap that merchandise for you." If such a statement does not result in the return of or payment for the merchandise, the salesperson may pursue the matter no further without the assistance of one of the mentioned store executives. . . .

The District Judge's ruling pertaining to this exhibit was first that on the facts admitted by appellant, plaintiff was not guilty of shoplifting, and second, that on the face of the rule, the rule did not apply to store employees. Our review of the facts and of the rule does not indicate reversible error as to this ruling.

We also feel that where a department manager is shown to have been aware of the controversy and on the actual scene that, where the allegations of theft were made by employees under his direct supervision, no company rule would suffice to insulate the corporation as a matter of law from responsibility for the actions of its employees if, as here, they were operating within the ambit of their employment as defined in *Poledna.*

Appellant also claims that the District Judge committed reversible error by refusing to charge the jury as to the limitation on damages contained in Section 2917 of the Revised Judicature Act, Michigan Compiled Laws Annotated Section 600.2917, Michigan Stat.Ann. Section 27A.2917 (1962), which provides:

> In any civil action against a merchant, his or its agent, for false imprisonment, unlawful arrest, assault,

battery, libel or slander, if the claim arose out of conduct involving a person suspected of removing or of attempting to remove from a store without right or permission goods held for sale therein, where the merchant, his or its agent had probable cause for believing and did believe that the plaintiff had committed or aided or abetted in the larceny of goods held for sale in the store, no damages for or resulting from mental anguish and no punitive, exemplary or aggravated damages shall be allowed a plaintiff, excepting when it is proved that the merchant, or his or its agent used unreasonable force or detained plaintiff an unreasonable length of time or acted with unreasonable disregard of plaintiff's rights or sensibilities or acted with intent to injure plaintiff. M.C.L.A. § 600.2917, M.S.A. § 27A.2917 (1962).

The judge's reasoning in refusing this instruction is as follows:

Mrs. Jones['] own conduct was the conduct of a person who had completed the contract and was protecting her property. She was then in the position of protecting her property. *Her conduct*[,] if you mean in not telling them where the typewriter was[,] *is not the kind that could be evidence of a theft.* From when I determined that the contract was completed at a certain time, I took care of that situation. . . . [emphasis added]

The District Judge apparently felt that the fact that plaintiff had received a sales slip and had paid for it rendered this statute wholly inapplicable, even if defendant's agents could reasonably have concluded that a mistake of some proportion had been made in relation to the price established for a sale.

We find no reversible error in the fact that the District Judge applied a rule of strict construction to this statute. On these facts plaintiff had not given appellant probable cause to believe she was guilty of larceny and appellant was not entitled to the benefit of this statute. *See* Bonkowski v. Arlan's Department Store, 383 Mich. 90, 107, 174 N.W.2d 765 (1970) (T. M. Kavanagh, J., concurring).

 The final appellate issue which requires comment pertains to the District Judge's handling of the testimony of Mrs. Adrian. Under the facts of this case, we find no reversible error in his ruling upon the use of a prior statement made by her. Michigan appears to have adopted a very liberal view on the use of previous statements. Hileman v. Indreica, 385 Mich. 1, 187 N.W.2d 411 (1971). The federal standard, of course, favors admissibility, Fed.R.Civ.P. 43(a), and gives a broad discretion to the trial judge in deciding such questions. Olin-Mathieson Chem. Corp. v. Allis-Chalmers Mfg. Co., 438 F.2d 833, 838 (6th Cir. 1971); Erie R.R. Co. v. Lade, 209 F.2d 948, 951 (6th Cir. 1954); Norwood v. Great American Indemnity Co., 146 F.2d 797, 799 (3d Cir. 1944).

The judgment of the District Court is affirmed.