SIAS *v.* GENERAL MOTORS CORPORATION.

1. LIBEL AND SLANDER—FALSE CHARGE OF THEFT.
   To charge another with theft falsely is actionable *per se.*

2. SAME—FALSE STATEMENTS TO FELLOW EMPLOYEES IN PLANT PRO--
   TECTION DEPARTMENT—PUBLICATION—QUALIFIED PRIVILEGE.
   Communications by defendant corporation's representatives to-
   fellow employees of plaintiff, its former member of plant
   protection staff, that he had misappropriated company prop-
   erty, a charge which was false, constituted a publication that
   was not protected by qualified privilege, where the statements
   were made for the purpose of restoring morale after plaintiff's
   separation from employment and to quiet rumors circulating
   among the plant protection force and were not confined to-
   supervisors, personnel department representatives, or company
   officials.

3. SAME—TRANSCRIPT OF EMPLOYMENT SECURITY REFEREE'S HEARING
   —CROSS-EXAMINATION—PRIVILEGED COMMUNICATION.
   The use of the transcript of an employment security referee's-
   hearing in cross-examining defense witnesses in action for-
   slander was not error, where the use of the transcript was
   not to support the action brought but as an aid in cross-
   examination, such report being accorded a privileged com-
   munication by statute (CL 1948, § 421.11[b], as amended by
   PA 1957, No 311).

REFERENCES FOR POINTS IN HEADNOTES

[1] 33 Am Jur, Libel and Slander § 31.
[2] 33 Am Jur, Libel and Slander § 126.
[3] 33 Am Jur, Libel and Slander § 124 *et seq.*
[4] 31 Am Jur, Jury § 136 *et seq.*
[5] 33 Am Jur, Libel and Slander §§ 204, 207.
[6] 33 Am Jur, Libel and Slander § 304.
[7] 33 Am Jur, Libel and Slander § 202.
[8] 33 Am Jur, Libel and Slander § 205.
[9, 11] 33 Am Jur, Libel and Slander § 285.
[10] 33 Am Jur, Libel and Slander § 199.

4. JURY—VOIR DIRE EXAMINATION—REQUESTED INTERROGATORIES.

Voir dire examination of jury by trial court relative to ability of jurors being fair and impartial in individual's action against defendant corporation which covered, in fair substance, defendant's request in such respect although not in precise language requested, was not error, good faith compliance by the court with requests of counsel for interrogatories being sufficient, especially where there was no corrective measure taken by counsel when opportunity was afforded.

5. LIBEL AND SLANDER—DAMAGES—LOSS OF EARNINGS—EVIDENCE.

Damages for loss of earnings must be causally related to the slander, proof thereof must be definite and not dependent upon speculation, and such are in the composite of general damages.

6. SAME—DAMAGES—INSTRUCTIONS.

Instruction of trial court in plant protection man's slander action against corporation for false accusation of theft, on subject of damages *held*, proper.

7. SAME—SPECIAL DAMAGES—NOTICE.

Special damages, otherwise called exemplary or punitive damages, would not be awardable in action where there is no malice, in the legal sense, on the part of the utterer.

8. SAME—DAMAGES—FEELINGS—VERDICT.

Verdict in slander action for "$24,800 on the general damages of a professional job; and $4,500 for special feelings and hurt feelings" and nothing for exemplary damages, is interpreted as meaning $24,800 in general damages, and $4,500 as specific damage to injured feelings where statute then required jury to specify amount it awarded for damages to feelings (CL 1948, § 620.22).

9. SAME—DAMAGES—REPUTATION.

One who is liable for a slander, actionable *per se*, is liable for harm caused thereby to the reputation of the person defamed or which normally results from such a defamation.

10. SAME—GENERAL DAMAGES—REPUTATION.

General damages in action for slander are a form of compensatory damages and are imposed for the purpose of compensating the plaintiff for the harm which the defamatory publication is proved, or in the absence of proof, is assumed to have caused to his reputation.

11. SAME—GENERAL DAMAGES—REPUTATION.

Award of $24,800 in action by plant protection man against former corporate employer as general damages to reputation

for false accusation of theft in addition to $4,500 as specific damage to injured feelings *held,* neither excessive nor unreasonable.

Appeal from Genesee; Parker (Donn D.), J. Submitted November 6, 1963. (Calendar No. 52, Docket No. 49,991.) Decided April 6, 1964.

Case by Gale R. Sias against General Motors Corporation, a foreign corporation, for slander. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Marvin L. Failer,* for plaintiff.

*McAra, Palmer & Keil* (*Robert P. Keil,* of counsel), for defendant.

O'HARA, J. This appeal is from denials of defendant's motions for judgment notwithstanding the verdict, to set aside the verdict, for a new trial and for an order of remittitur. Plaintiff had verdict for slander in the amounts of $24,800 for "general" damages, and $4,500 for "hurt feelings."

The essential facts are: Gale R. Sias, plaintiff, 42, prior to the institution of his action was employed by General Motors Corporation in the Buick plant protection department. His duties were, generally, patrol by unmarked car, gate supervision, time clock runs and protection of company property. He started in this capacity in December, 1950. On December 10, 1960, his employment terminated. It is the circumstances of the termination of the employment and its aftermath which give rise to the case we consider.

Properly part of the record and virtually uncontradicted is plaintiff's standing and general reputation in the community. He was active in many civic

and fraternal organizations and service clubs.' He participated actively in the eyesight conservation program of 1 of the service clubs. He attained recognition at State and national level in other organizations. He was a more than passive parent-teacher association member. It is an indisputable conclusion of fact that by reason of the foregoing activity he was reasonably well known and had achieved a moderate degree of recognition as a "substantial citizen" in his native city of Flint. So much of the record factually is not in serious dispute. Disputed factual issues arise in the area of the events attending his separation from defendant's employ.

Plaintiff contends: That the generator on his car became inoperative; that he was no mechanic and didn't know what was wrong with it; that he mentioned this to a fellow employee who was a mechanic; that he (the mechanic) offered to obtain a surplus generator for plaintiff. Sias alleges he understood the purchase of the generator could be arranged as salvage from the company. The mechanic was supposed to leave it on his workbench for plaintiff to pick up. The foregoing is supported by the testimony of plaintiff and the mechanic Stevens. Apparently the mechanic did not in fact find the type of generator or parts for the generator needed before the time plaintiff believed the mechanic had obtained it.

On the night preceding plaintiff's separation, while on 1 of his "clock runs," he observed a generator on Stevens' bench. Stevens, the mechanic, was working days, plaintiff nights. Plaintiff picked up from the bench what he claims he believed was the generator Stevens had selected. He asked still another employee who was working in the area of Stevens' station whether that generator was the one Stevens had procured for him (plaintiff). The employee, Herrick, according to plaintiff, confirmed that it was.

Herrick contrariwise contends that he told plaintiff he did not know whether it was or not. The following day it appeared that the generator plaintiff took was not a salvageable item but was being repaired for use by the company. Meanwhile plaintiff had taken the item to the plant protection booth at the Michigan avenue entrance and set it on the floor, telling another officer Thomas who was on duty there, that he, plaintiff was going to take it to salvage the next morning to buy it. Plaintiff who at that time was being treated at the plant medical office for an injured eye claims he then went for another treatment. When he returned to get the generator and explain the situation to the salvage sales department he was met by 3 of his superiors. The chief of the plant protection force told him his conduct was not in accordance with regulations. He is said to have charged plaintiff with misappropriating company property. It should be noted here that there is a considerable amount of semantic toe-dancing on the head of a terminological pin concerning the difference between theft and misappropriation. We agree with the trial court. It has no merit. To a plant protection guard accused of one or the other, the difference is academic.

After plaintiff's separation, which in actuality became a resignation at his request in lieu of a pending discharge, a marked lowering in the morale of the plant protection department took place. There was testimony that there were rumors circulating which were damaging to that morale. Management chose to call in at random several plant protection men, fellow employees of plaintiff off each shift and explain why plaintiff "resigned." It is not unreasonable to assume that curiosity existed among them as to whether plaintiff's separation was a resignation in fact or a discharge and, if so, for what. It was to these men, fellow employees in the same status as

plaintiff before discharge, that defendant chose to explain the situation in order to arrest the rumors and restore morale. In so doing, an agent of defendant corporation in the course of his employment said plaintiff was released for "misappropriation of company property." In October of 1961, plaintiff instituted his action resulting in the verdict appealed from.

The statement we are concerned with is variously said to be "misappropriation of company property," or "conspiring to misappropriate company property." Whatever the form, the plain import was theft. To charge another with theft falsely is actionable *per se*. *Bacon* v. *Michigan Central R. Co.*, 55 Mich 224 (54 Am Rep 372). We must read the verdict of the jury in this case to find that the charge was false.

Appellant presents 7 claimed errors. Five are concerned with the court's charge. One is a refusal by the judge to ask a specific question of the jurors on *voir dire*. The other deals with the construction of the statute granting absolute privilege to communications, reports or statements made to the Michigan employment security commission.

Appellees in different phrasing state the questions somewhat similarly.

We believe the following questions should be discussed:

(1) Did defendant publish a slanderous statement?

(2) Was the statement actionable per se?

(3) Was its publication protected by a qualified privilege?

(4) Was reversible error committed by the court in allowing counsel to use the transcript of an employment security referee's hearing in cross-examining defense witnesses?

(5) Was reversible error committed by the court, either in its charge, or upon *voir dire* examination?
(6) Was the verdict, if validly rendered, excessive?

On the question of the publication of the statement we hold that in calling in fellow employees of plaintiff and "explaining" the circumstances of his separation, defendant corporation was serving its own particular interest. That interest, as described by defendant's representatives, was to restore morale in the plant protection force and to quiet rumors that were circulating among its members, adversely affecting the company. These men were not supervisors, personnel department representatives, or company officials. They were simply fellow employees in the identical work. No privilege extended to the communication to them and the trial court properly so held. See *Bostetter* v. *Kirsch Co.*, 319 Mich 547, for a discussion of the doctrine of qualified privilege. We answer our first 3 questions as did the trial judge. The statement falsely made and published was actionable *per se* and was not protected by qualified privilege.

We direct ourselves to the question of the use of the transcript from an employment security commission hearing on cross-examination as affected by statutory privilege. Had the hearing been the only place the statements had been uttered, a different situation would have been presented. The statute* is explicit. Its pertinent excerpt is:

"Any report * * * written or verbal * * * shall be a privileged communication and no person, firm or corporation shall be held liable for slander or libel on account of any such report or statement."

In this case we are not concerned with an invasion of the privilege and an attempted action for libel or

---

* PA 1936 (Ex Sess), No 1, § 11(b) (CL 1948, § 421.11[b], as amended by PA 1957 No 311 [Stat Ann 1960 Rev § 17.511(b)]).

slander by reason of any communication to the commission. Here the actionable statement was previously made. The fact of its having been made was admitted and the defense of the truth thereof was asserted. Here the purpose of the use of the transcript was not to support the action brought but as an aid in cross-examination. The difference should be obvious. We would quickly strike down any attempt to use any communication to the employment security commission as a basis for libel or slander. We affirm the holding of the trial court in his ruling on this point.

We turn now to the asserted error in the refusal of the trial judge to ask a requested question on *voir dire*. The question was phrased as follows:

"Would the fact that the plaintiff is an individual who is suing the defendant, General Motors Corporation, for damages, cause you to feel sympathy in favor of the plaintiff and prevent your returning a fair and just verdict?"

The trial court did not ask the questions verbatim; however, he questioned the jury as follows:

*"The Court:* Do any of you have any bias, prejudice, or preconceived ideas either for or against General Motors Corporation?

"Are all of you willing to treat General Motors the same as you would any other individual or corporation that happened to get sued?  *  *  *

"Do any of you know of any reason why you couldn't sit fairly and impartially in hearing this dispute?"

After concluding, the court queried counsel thus:

"I think I've covered most of your written requests, Mr. McAra [defense counsel]. I've abbreviated some and modified some, and I believe I've covered the grounds. Do you have any more?

*"Mr. McAra:* I don't believe it, your Honor."

We think the foregoing covered, in fair substance, defendant's requests. It is well settled that just as it is not error to refuse to give a charge in language requested, so it is not error on *voir dire* examination of jurors to decline to ask a proffered question in the precise language presented. See 6 Callaghan's Michigan Pleading and Practice, § 38.29, *voir dire* examination:

"Good faith compliance by the court with requests of counsel for interrogatories suffices."

The last assignment of error is the court's instruction in relation to the nature of damages awardable and the amount thereof. Two kinds of damages were awardable in actions for slander. The distinction between them rested on statute and that distinction was also delineated in case law. They were "general damages" and "special damages." Michigan complicated this simple distinction somewhat by a statute requiring that any amount awarded for "damages to feelings"* must be specified in the verdict. There was a further requirement resting upon well-established case precedent that damages for loss of earnings must be causally related to the slander and proof thereof must be definite and not dependent upon speculation. See *Poledna* v. *Bendix Aviation Corp.*, 360 Mich 129, 138. Any damages for loss of earnings, however, like those for "damages to feelings" are in the composite of the general damages. The trial court properly charged the jury in this respect. "Special" damage is only a different and less exact phrasing of 2 well-defined legal terms— "punitive" or "exemplary" damage. This concept and this type of damage is not involved in this case. They are awardable only in a case where the slander is maliciously published. There is no proof in this

* CL 1948, §§ 620.21, 620.22 (Stat Ann §§ 27.1371, 27.1372), since repealed by PA 1961, No 236.

record of any malice in the legal sense of the term on the part of defendant corporation, and no punitive or exemplary damages were awarded by the jury. In this case the whole verdict was in the nature of general damages, and $4,500 of it was specified for "hurt feelings." The jury was explicit, if not legalistic, in its phraseology:

*"The Foreman:* $24,800 on the general damages of a professional job; and $4,500 for special feelings and hurt feelings, and we voted 'No' on exemplary, nothing."

We read the verdict to have meant $24,800 in general damages, and $4,500 as specific damage to injured feelings.

We think the rule of damage is succinctly stated in 3 Restatement, Torts, § 621:

"One who is liable for a libel or for a slander actionable *per se* is liable for harm caused thereby to the reputation of the person defamed or in the absence of proof of such harm, for the harm which normally results from such a defamation. * * * General damages are a form of compensatory damages. They are imposed for the purpose of compensating the plaintiff for the harm which the defamatory publication is proved, or, in the absence of proof, is assumed to have caused to his reputation. It is not necessary for the plaintiff to prove any specific harm to his reputation or any other loss caused thereby. Indeed, in many cases the effect of defamatory statements is so subtle and indirect that it is impossible directly to trace the effects thereof in loss to the person defamed. If the plaintiff is able to show a particular pecuniary loss resulting from the defamatory publication, he may recover for the special harm thus caused under the rule stated in section 622. If, however, he is unable to show such definite loss, but the defamatory publication is of such kind and was published under such circumstances as to justify the inference of some general impairment of his reputation

or, through loss of reputation, to his other interests, he is entitled to recover general damages therefor."

We agree with plaintiff that general damage to his reputation was adequately established—or indeed could, under the foregoing rule, have been assumed from the defamation. Under the proof of plaintiff's excellent general reputation, we cannot say that the award of $24,800 was excessive. Damage to reputation, while intangible, is not more so than the sum which would "reasonably compensate" a tortiously injured claimant for a life-long limp, or for "pain and suffering."

Reading the whole record with assiduous care, we conclude that once the jury found the charge of theft, *i.e.*, misappropriation, false, the consequential general damage award was not unreasonable.

The orders denying judgment *non obstante veredicto* denying a new trial and for remittitur are affirmed. The case is remanded to the circuit court with instructions to enter judgment on a verdict of $29,300. Plaintiff may tax costs.

Kavanagh, C. J., and Dethmers, Kelly, and Black, JJ., concurred.

Souris and Smith, JJ., did not sit.

Adams, J., took no part in the decision of this case.