328 So.2d 52 (1976)
Billy G. DRENNEN, Appellant,
v.
WESTINGHOUSE ELECTRIC CORPORATION, Appellee.
No. W-340.
District Court of Appeal of Florida, First District.
March 5, 1976.
*53 Bill E. Parker of Parker & Morton, Milton, for appellant.
Gary B. Lane, Pensacola, for appellee.
BOYER, Chief Judge.
In this libel and slander action, appellant, plaintiff in the trial court, appeals from a directed verdict entered in favor of appellee at the conclusion of appellant's case. Appellant raises several points on appeal, alleging that the publication was libelous per se and not qualifiedly privileged, that there was sufficient evidence of slander to establish a prima facie case, that there was similar evidence of malice, and that certain testimony excluded as hearsay evidence by the trial judge should have been admitted into evidence.
The events leading up to the publication of the alleged defamation began on September 7, 1973, when appellant, an employee at appellee's Pensacola plant, took some pieces of company owned scrap rods and taped the ends together in order to facilitate his physical exercise program which he conducted on company property during his meal break. Appellant placed the pieces of scrap rods in his truck because, as he testified, he intended to use them again on the following night for the same purpose. His supervisors became aware of his actions and, after discussing the matter with appellant, suspended him. Rumors began circulating around the plant concerning the incident involving appellant. In response, appellee published a "work *54 place meeting script" which stated that an employee had committed a class "A" offense as defined by the employee handbook.[1] The meeting script specifically alleged that the employee (otherwise unnamed) bundled company material together and placed it in his truck with no company property pass. The script was read to approximately 300 Westinghouse employees. According to one worker, one of appellee's supervisors (after having read the script to a group of employees) told the assembled men that appellant had been discharged for taking company property.
During the trial of the case, witness David Spears, testifying for appellant, answered questions about a discussion that he had with another Westinghouse employee, Mike Miller, concerning appellant's termination of employment with appellee. Mr. Spears related that Miller told him that he (Miller) had heard from some undisclosed source that appellant had been terminated by appellee for stealing. A motion to strike that testimony was granted by the trial court. The trial court also sustained an objection to testimony of Mr. Spears concerning what appellant told him (Spears) about the events which led to appellant's termination. In directing a verdict for appellee, the trial court held that the work place meeting script did not constitute libel per se, that there had been no evidence presented as to slander, and that the communications of appellee were qualifiedly privileged.
An examination of the allegedly defamatory publication is necessary in order to determine whether it is libelous per se. The meeting place script states that an employee was terminated for violation of a class "A" offense in that certain materials were bundled and placed in the employee's truck without the required company pass. Under the circumstances, the only potentially applicable class "A" offenses are stealing; and hiding, concealing or misappropriation of Westinghouse property or the property of other employees. Under Florida law, a publication is libelous per se when it imputes to another a criminal offense amounting to a felony, or conduct, characteristics, or conditions incompatible with the proper exercise of one's lawful business, trade, profession, or office. (Teare v. Local Union No. 295, Sup.Ct. Fla. 1957, 98 So.2d 79) At the very least, the publication in question accuses appellant of conduct incompatible with the proper exercise of his employment or profession which is clearly actionable per se. 20 Fla.Jur. 560, "Libel and Slander" § 33; Prosser on Torts, 3rd Ed. (1964) at 776; Briggs v. Brown, 1908, 55 Fla. 417, 46 So. 325.
Our finding that the publication constitutes libel per se does not automatically require reversal. If the record establishes an absolute defense, then the trial court was correct in entering a directed verdict in favor of appellee. The testimony produces two potential defenses, The first such defense is truth. That defense is of constitutional origin in Florida. Article 1, Section IV of the Florida Constitution (1968 Rev.) provides, "In all criminal prosecutions and civil actions for defamation the truth may be given in evidence. If the matter charged as defamatory is *55 true and was published with good motives, the party shall be acquitted or exonerated." The constitution makes it clear that truth, in and of itself, is not a complete defense in an action for defamation, but truth coupled with good motives is. The issues of truth and good motives are normally to be resolved by the jury. (Curtis Pub. Co. v. Fraser, 5th Cir.1954, 209 F.2d 1; Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co., 5th Cir.1970, 430 F.2d 38)
In the instant case, there was sufficient evidence in the trial testimony to submit the issue of the "truth" defense to the jury. The meeting place script alleged that a class "A" offense had been committed, while appellant testified that he did not intend to take the scrap metal and that he was merely using it during his exercise period which took place on plant property. The conflict in the evidence creates an issue upon which reasonable minds could differ and which, consequently, should have been submitted to the jury.
The second potential defense available to appellee is the qualified privilege involving a response to a legal, moral or social obligation. (See Mays v. Stratton, Fla.App. 1st 1966, 183 So.2d 43) This precise issue was covered in a remarkably similar case in another jurisdiction, Sias v. General Motors Corp., 1964, 372 Mich. 542, 127 N.W.2d 357. The plaintiff in the Sias case, a worker for General Motors, was accused of misappropriating company property and was allowed to resign. When rumors began circulating among his former fellow workers, management talked to several of the men, and told them that plaintiff was released for misappropriation of company property. The Michigan court, recognizing that good motive is a prerequisite to qualified privilege, addressed itself to that issue in the following manner:
"On the question of the publication of the statement we hold that in calling in fellow employees of plaintiff and `explaining' the circumstances of his separation, defendant-corporation was serving its own particular interest. That interest, as described by defendant's representatives, was to restore moral in the plant protection force and to quiet rumors that were circulating among its members, adversely affecting the company. These men were not supervisors, personnel department representatives, or company officials. They were simply fellow employees in the identical work. * * * The statement falsely made and published was actionable per se and was not protected by qualified privilege."
Similarly, in the instant case, the testimony of one of appellee's representatives indicates that the publication in question tended to serve appellee's own particular interest. We conclude that the publication was not protected by any qualified privilege.
Appellant urges us to consider the issue of malice, because implicit in the trial court's ruling that appellee was protected by a qualified privilege is the finding that there was no evidence of malice. In view of our holding that the publication in question was not protected by qualified privilege, discussion of the issue of malice is unnecessary.
We are also convinced that there is sufficient evidence of slander in the record to require the submission of the issue to the jury. The testimony reveals that one of appellee's supervisors, after reading the meeting place script to the shift of men under his control, told them that appellant had been discharged for taking company property. Evidence which indicates that agents of appellee "explained" the written publication is sufficient to establish a prima facie case of slander.
Finally, appellant complains that the trial court erred in excluding the testimony of the witness Spears. In this matter, the trial court was clearly correct. *56 The proposed testimony was hearsay and inherently unreliable. In fact, that part of Spears' testimony wherein he sought to relate what he had heard concerning the reason for appellant's dismissal was shown to be hearsay on hearsay. When Spears attempted to testify as to what appellant had told him concerning appellant's termination, the trial court again correctly ruled that the testimony was inadmissible as both hearsay and self-serving declaration.
The order of the trial court directing a verdict in favor of appellee is reversed, and the cause is remanded for trial.
Reversed and remanded.
McCORD and MILLS, JJ., concur.
NOTES
[1] The employee handbook enumerates 13 class "A" offenses, among which are stealing and hiding, concealing or misappropriation of Westinghouse property or the property of other employees. Commission of a class "A" offense is "inexcusable and may result in immediate discharge." A second employee handbook contained in the record, but which was not admitted into evidence because it had not yet been printed at the time the incident in question occurred, lists 11 class "A" offenses, one of which is "taking or receiving, without authorization, goods, materials or equipment belonging to the company, fellow employees or customers." (We mention the latter handbook only because it is in the record and there has been no motion to strike it. Since it was never admitted into evidence it could not have been properly considered by the trial court and may not be considered by this court.)