Michelle HORTON, Plaintiff,

v.

48TH DISTRICT COURT; and James P. Harkins, Jr., Defendants.

No. CIV. 05–072356.

United States District Court, E.D. Michigan, Southern Division.

Aug. 16, 2006.

Deborah L. Gordon, Deborah L. Gordon Assoc., Bloomfield Hills, MI, for Plaintiff.

Thomas F. Myers, Thomas R. Paxton, Garan Lucow, Detroit, MI, for Defendant.

## OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

FEIKENS, District Judge.

Plaintiff Michelle Horton brings this action against her former employer, the 48th District Court, and court administrator James Harkins, alleging wrongful discharge, violation of due process under 28 U.S.C. § 1983, and defamation. Defendants move for summary judgment on all counts, and for the reasons that follow, this Court GRANTS in part and DENIES in part Defendants' motion.[1]

## I. FACTUAL BACKGROUND

In 1990, Plaintiff began employment as a clerk at the 48th District Court in Bloomfield Hills. (Pl.'s Resp. 2.) She was select-

---

**1.** In response to Defendants' motion, Plaintiff filed a 31–page response brief supported by voluminous exhibits, a reply brief, and a supplemental brief. This Court reminds Plaintiff's counsel of the page limits and other restrictions on briefs set by E.D. Mich. Local Rule 7.1.

ed as the court's "Employee of the Year" for 2004. *Id.* Her employment was terminated on December 16, 2004. (Pl.'s Resp. 1, Ex. M.) Defendants claim she was fired for violating the court's policy regarding the use of the court's LEIN/SOS computer system. The LEIN/SOS is a statewide electronic database that contains information on crimes and driving records. (Pl.'s Resp. 14–15.) Plaintiff asserts that she never violated the court's LEIN/SOS policy, and that her termination was an act of political retribution related to the election campaign of Judge Marc Barron.

The following sequence of events lead up to Plaintiff's termination. In October 2004, Court Administrator James Harkins and Chief Judge Kimberly Small heard rumors that Plaintiff had engaged in misconduct at the court. (Pl.'s Resp. 3–10.) These rumors alleged that Plaintiff had leaked an internal court document about the arrest of judicial candidate Marc Barron's wife, that Plaintiff had received gifts in exchange for influencing cases before the court, and that Plaintiff had used the court's LEIN/SOS system for non-court business. *Id.* Harkins investigated these rumors, and the matter was turned over to the Bloomfield Township Police on October 12, 2004. (Pl.'s Resp. 9–11.)

Police Captain Kirt Bowden and Detective Dwayne Barker (collectively the "investigating officers") undertook the criminal investigation of Plaintiff's alleged misconduct at the court. (Pl.'s Resp. Ex. F.) Their written report of the investigation indicates they interviewed Plaintiff on December 10, 2004. *Id.* According to their report, Plaintiff said she had used the court's LEIN/SOS system to perform a criminal history check on the name "Eric Ebersold," as well as on other individuals "just for curiosity," and that she had queried license plates for personal reasons.[2] *Id.* The report concludes, "The only criminal act that could be proven at this point would be the prohibited personal use of the LEIN/SOS system." *Id.* The investigation was closed, and the Oakland County Prosecutor's Office indicated it would not pursue criminal charges against Plaintiff. *Id.*

Plaintiff contends that the investigating officers' report contains false information. In her affidavit, Plaintiff states that she "did not use the LEIN and/or SOS systems for personal use, nor did I otherwise violate Defendant's LEIN and/or SOS policy." (Pl.'s Supp. Br. Ex. A.) She claims she never told the investigating officers that she had used the court's LEIN/SOS system for non-court business or queried license plates for personal reasons. (Pl.'s Resp. 15; Pl.'s Dep. 84–88, 116–118.) Plaintiff admits that she ran the name "Eric Ebersold" because he had asked her to do so and he had a case pending before the court. *Id.*

On December 14, 2004, Defendant Harkins entered Plaintiff's office and told her she was being suspended because she had admitted to using the LEIN/SOS system for personal reasons. (Pl.'s Resp. 17.) Plaintiff alleges she told Harkins that she never admitted this. *Id.* She states that Harkins did not explain the evidence against her, nor did he give her a chance to respond to the accusation before she

**2.** Additionally, the report alleges that Plaintiff gave the investigating officers other incriminating information. Plaintiff allegedly said she made phone calls to police officers on behalf of friends, family members, and attorneys before the court, all of whom wanted traffic citations dismissed. (Pl.'s Resp. Ex. F.) Plaintiff allegedly said sometimes she received gifts after making these phone calls, such as food, drinks, hockey tickets, and a two-night hotel stay, but denied there was any connection between the gifts and the phone calls. *Id.*

was escorted from the building. (*Id.;* Pl.'s Reply 6.) Defendants claim that Harkins asked Plaintiff to explain herself, but she refused to provide any information. (Defs.' Mot. 5.) Defendants allege that Harkins had a telephone conversation with Plaintiff's attorney and informed him Plaintiff would be suspended with pay. (Defs.' Mot. 5.) On December 16, Plaintiff received a letter from Harkins stating that her employment was terminated "for personal use of the LEIN/SOS system." (Pl.'s Resp. 17, Ex. M.) Plaintiff asserts that she never received a hearing or an opportunity to respond to the allegations against her. (Pl.'s Resp. 17; Pl.'s Dep. 116.)

Harkins testified that Plaintiff was fired based on two pieces of information. (Harkins Dep. 52–53.) First, the investigating officers told Harkins that Plaintiff had admitted to using the LEIN/SOS system for non-court business. (Harkins Dep. 52–53.) Plaintiff claims she never admitted this. (Pl.'s Resp. 15.) Second, based on LEIN/SOS system records, Harkins verified that there were no open court cases for five persons whose records had been accessed from Plaintiff's computer terminal. (Harkins Dep. 31–43, 52–53.) The court's employee manual states, "All LEIN/SOS transactions must be directly related to a 48th District Court case." (Defs.' Mot. Ex. B.) Plaintiff argues this is not evidence that she misused the LEIN/SOS system, because Harkins testified that any employee could have used Plaintiff's computer terminal to access the LEIN/SOS system. (Harkins Dep. 55–57.) Moreover, Harkins testified that he would ask court employees to search the SOS system for cars parked in the court's parking lot, and those searches would not necessarily involve an open case before the court. (Harkins Dep. 20–21, 59–61.)

After Plaintiff's termination, Defendants issued a memo from Harkins to "All Employees" of the court, stating, "It is with a heavy heart that I inform you that Michelle Horton's employment has been terminated for repeated violations of the LEIN and/or SOS policy." (Pl.'s Resp. 21; Defs.' Mot. 9, Ex. G.) On April 13, 2005, Plaintiff sent a letter to Harkins and Chief Judge Smalls requesting a hearing to clear her name. (Pl.'s Resp. Ex. K.) Plaintiff says Defendants never responded to her request and she was not afforded a hearing. (Pl.'s Resp. 21.)

## II. ANALYSIS

### A. Standard of Review

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if proof of that fact would establish or refute one of the essential elements of a claim or defense and would affect the application of governing law to the rights and obligations of the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). The court must view the evidence and any inferences drawn therefrom in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For a claim to survive summary judgment, the nonmovant must offer more than a mere scintilla of evidence as to the material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant's burden is satisfied where there is an absence of evidence to support the nonmovant's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Wrongful Discharge

 Plaintiff's wrongful discharge claim is based on her assertion that Defen-

dants maintained written policies that gave rise to a legitimate expectation that her employment would not be terminated without just cause. Defendants argue that the court's policy statements indicate that Plaintiff's employment was terminable at will. Michigan law presumes that employment relationships are terminable at the will of either party. *Lytle v. Malady,* 458 Mich. 153, 163, 579 N.W.2d 906 (1998). That presumption is overcome by an employee's proof of "a contractual provision, implied at law, where an employer's policies and procedures instill a legitimate expectation of job security in the employee." *Id.* (citing *Toussaint v. Blue Cross & Blue Shield of Mich.,* 408 Mich. 579, 615, 292 N.W.2d 880 (1980)). For legitimate expectations claims, the court must decide "what, if anything, the employer has promised," and "whether that promise is reasonably capable of instilling a legitimate expectation of just-cause employment . . . ." *Id.* (citing *Rood v. General Dynamics Corp.,* 444 Mich. 107, 138–39, 507 N.W.2d 591 (1993)).

Each party cites language from the 48th District Court's employee manual in support of its characterization of Plaintiff's employment relationship. Plaintiff cites "Section 12, Grievance Procedures," and a subsection titled "Grievances concerning termination of employment," which states, "Employment with the Court may be terminated for good cause," and provides several examples of what constitutes good cause for termination. (Pl.'s Resp. Ex. G, p. 46.) Defendants cite "Section 11, Disciplinary Rules," which states, "Nothing in this Section is intended to restrict the right of the Court to terminate employment at-will." (Defs.' Mot. Ex. B, p. 43.)

Defendants argue that this language in Section 11 functions as a specific disclaim-

er reserving the court's right to terminate employment at will. Conversely, Plaintiff argues it implies that other sections of the manual could contain restrictions on at-will employment. Defendants rely on *Lytle v. Malady,* 458 Mich. 153, 579 N.W.2d 906 (1998), and *Mannix v. County of Monroe,* 348 F.3d 526 (6th Cir.2003), both of which can be distinguished from the present case.[3] In *Lytle,* the Michigan Supreme Court held that language in an employee handbook barred a legitimate expectation of just-cause employment. The handbook contained a contractual disclaimer, "The contents of this booklet are not intended to establish, and should not be interpreted to constitute any contract between [the employer] and any employee, or group of employees." 458 Mich. at 162, 579 N.W.2d 906. In the present case, the employee manual at issue contains no contractual disclaimer. In *Lytle,* a subsequent addition to the handbook read, "The Company reserves the right to terminate employees without assigning cause; therefore, the employee serves at the will of the employer." *Id.* In contrast, the "at-will" language in Section 11 cited by Defendants is not nearly as broad or explicit, nor does it expressly reserve the right to terminate employment at will.

Similarly in *Mannix,* the personnel manual explicitly stated that "applicants are to understand that their employment with Monroe County is not for any definite term and may be terminated at any time with or without cause and without advance notice." 348 F.3d at 529. The language cited by Defendants is not as definitive, and is rendered even less so when read in conjunction with the "good cause" language in Section 12 cited by Plaintiffs. Moreover, the plaintiff in *Mannix* signed

---

**3.** Defendants' citation of *Brown v. City of Niota,* 214 F.3d 718 (6th Cir.2000), is inapposite, because the court applied a heightened stan-

dard under Tennessee law regarding the creation of just-cause employment by an employee manual.

an offer of employment stating that his position was "an 'at will' non-union position." *Id.* Based on this and the personnel manual, the Sixth Circuit held there was no legitimate expectation of just-cause employment.

■ Based on the standard set by *Lytle* and *Mannix*, this Court finds that the language in Section 11 does not constitute a disclaimer reserving the right to terminate employment at will. The Michigan Supreme Court teaches in *Rood* that when "the employer's policies relating to employee discharge are capable of two reasonable interpretations, the issue is for the jury."[4] 444 Mich. at 140–41, 507 N.W.2d 591. A reasonable jury could find that the language in Sections 11 and 12 is reasonably capable of instilling a legitimate expectation of just-cause employment in an employee. *See Merlino v. MGM Grand Detroit. LLC*, No. 247165, 2004 WL 2050305 (Mich.App. Sept. 14, 2004) (contradictory statements in an employee handbook and an acceptance letter created a jury question on plaintiff's employment status). Therefore, because a jury question exists as to whether Plaintiff was terminable for cause, this Court denies summary judgment on Plaintiff's wrongful discharge claim.[5]

## C. Due Process Violation, 28 U.S.C. § 1983

### (1.) Property Interest in Continued Employment

■ Plaintiff argues she was denied due process when her employment was terminated without a hearing. When evaluating due process claims, the court must determine whether the plaintiff has a property interest that merits due process protection, and if so, what process is due. *Leary v. Daeschner*, 228 F.3d 729, 741–43 (6th Cir.2000). "A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004). A public employee whose employment may be terminated for just cause has a protected property interest in continued employment. *Id.* at 566; *Gregory v. Hunt*, 24 F.3d 781, 785 (6th Cir.1994). This Court assumes for purposes of summary judgment that Plaintiff was terminable for just cause and thus has a property interest in continued employment, although as previously stated, this is ultimately a jury question.

■ In terms of what process is due, the Supreme Court teaches that a pre-termination hearing is required, which must include, at a minimum, oral or written notice of the allegations against the employee, an explanation of the employer's evidence, and an opportunity for the employee to respond to the charges. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). An "abbreviated" pre-termination hearing that does not exceed the minimum requirements must be followed by a "more meaningful" post-termination hearing.

---

**4.** Based on *Rood's* teachings, it is the jury's role to decide how a reasonable employee would weigh the language cited in Sections 11 and 12. This Court notes that it may be a difficult decision for the jury, and the parties should be prepared to offer evidence sufficient to assist the jury in its deliberation. This Court will rule on any objections to that evidence at trial.

**5.** There is also a jury question as to the reason behind Plaintiff's termination. When the employer claims that the employee was discharged for specific misconduct, and the employee disputes that the misconduct occurred or claims it is pretextual, the question is one of fact for the jury. *Toussaint*, 408 Mich. at 621, 292 N.W.2d 880.

*Mitchell v. Fankhauser*, 375 F.3d 477, 480–81 (6th Cir.2004). The discharged employee must be allowed "to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him." *Id.* at 481.

Plaintiff claims that her employment was terminated without a pre- or post-termination hearing. (Pl.'s Resp. 17, 27; Pl.'s Dep. 106–107, 116–118, 120–121.) She alleges that she first learned of the allegations against her during the December 14 meeting with Harkins in her office. *Id.* During that meeting, she claims she was not presented with Defendants' evidence against her, and she was not given a chance to respond to the charges before being escorted from the building. *Id.* After her employment was terminated on December 16, she received no post-termination hearing, even after she had specifically requested a name-clearing hearing. (Pl.'s Reply 7.)

Defendants argue that Plaintiff waived her due process right to a hearing, but cite no cases in support of this proposition. (Defs.' Reply 4.) They state that, at the December 14 meeting with Harkins, Plaintiff had the opportunity to present evidence and had access to counsel (she was on the phone with her attorney), but failed to take advantage of it. This argument is without merit, because even if the December 14 meeting satisfied the minimum standard for an abbreviated pre-termination hearing, Plaintiff still would be entitled to a more thorough post-termination hearing, which she did not receive. *Mitchell*, 375 F.3d at 480–81.

Plaintiff offers sufficient evidence of a due process violation with regard to a property interest in continued employment, and this Court denies summary judgment as to this claim.

### (2.) Liberty Interest in Reputation and Good Name

 Plaintiff alleges a due process injury to her constitutionally protected liberty interest in her reputation and good name. Plaintiff argues that she was stigmatized by the memo from Harkins (the "Harkins memo") addressed to "All Employees" of the court, stating, "It is with a heavy heart that I inform you that Michelle Horton's employment has been terminated for repeated violations of the LEIN and/or SOS policy." (Pl.'s Resp. 27–29; Defs.' Mot. Ex. G.) She also bases her claim on "the launch of the criminal investigation itself," but she does not specifically identify any allegedly stigmatizing statements made in connection with the investigation. After her termination, she requested a hearing to clear her name, but received no response or hearing from Defendants. (Pl.'s Resp. 21, Ex. K.) Defendants argue that Plaintiff was not entitled to a name-clearing hearing, because the Harkins memo was not "false, publicly disseminated, or sufficiently stigmatizing." (Defs.' Reply 3.)

 Among the liberty interests protected by the Due Process Clause are "a person's reputation, good name, honor, and integrity." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir.2002) (citing *Ludwig v. Bd. of Trustees*, 123 F.3d 404, 410 (6th Cir.1997)). The Sixth Circuit teaches that an employee is entitled to a hearing to clear her reputation and good name if five factors are established: (1) the employer made stigmatizing statements in conjunction with the employee's termination; (2) the statements are more than mere allegations of "improper or inadequate performance, incompetence, neglect of duty or malfeasance"; (3) the statements were made public; (4) the employee claims the statements are false; and (5) public dis-

semination of the statements was voluntary. *Id.* at 320. If an employee meets all five of these elements, she has the right to a name-clearing hearing if she requests one. *Id.* It is the denial of this hearing that causes the deprivation of liberty without due process. *Id.*

■ Summary judgment is appropriate on this claim because Plaintiff cannot satisfy the second *Ludwig* factor. Regarding this factor, the Sixth Circuit has held:

> [T]o implicate the Due Process Clause, the employer must have made a statement in the course of the employee's discharge "that might seriously damage his standing and associations in his community" or that might impose "on him a stigma or other disability that would foreclose his freedom to take advantage of other employment opportunities." A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty.

*Ludwig,* 123 F.3d at 410 (internal citations omitted). An employer's statement "that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." *Id.* The statement must be so stigmatizing "that it effectively forecloses the opportunity to practice a chosen profession." *Joelson v. United States,* 86 F.3d 1413, 1420 (6th Cir.1996); *see also Gregory,* 24 F.3d at 789 ("At least two circuits have held, however, that charges giving rise to the termination of an employee which do not include allegations of serious character defects, such as dishonesty or immorality, as a matter of law do not foreclose future employment opportunities.").

Plaintiff admits that after her December 2004 separation from the court, she began working as a legal assistant at a law firm in April 2005. (Pl.'s Reply 6, Pl.'s Dep. 12–13.) She remained employed there as of her October 2005 deposition. *Id.* Plaintiff states that she applied but did not interview with other employers, and she presents no evidence that she was denied employment elsewhere due to the Harkins memo. (Pl.'s Dep. 124–125, 132.) Clearly Plaintiff's reputation was not so tarnished by the Harkins memo that she was unable to obtain other employment in the legal field. *See Med Corp., Inc. v. City of Lima,* 296 F.3d 404 (6th Cir.2002) (finding no reputation injury where plaintiff had other business opportunities); *Brown v. City of Detroit,* 259 F.Supp.2d 611, 622 (E.D.Mich. 2003) (Rosen, J.) ("More generally, it cannot be said that Defendants' statements precluded Plaintiff from practicing his chosen profession, because he remains employed as a police officer, albeit not under the circumstances that he would prefer.").

Moreover, the statement that Plaintiff's employment was terminated "for repeated violations of the LEIN and/or SOS policy" is not imbued with a moral stigma that would cause serious harm to Plaintiff's reputation. *See Gregory,* 24 F.3d 781 (statements that employee was terminated for failure to follow clear instructions and for violation of departmental policy and procedures did not cause liberty deprivation); *Isaac v. Conrad,* 39 F.Supp.2d 1025 (S.D.Ohio 1999) (statements that employee was terminated for poor performance and failure to live up to standards did not contain moral stigma).

As a matter of law, Plaintiff was not deprived of a liberty interest in her reputation and good name, and this Court grants summary judgment on this claim.

## D. Defamation

■ Plaintiff's defamation claim is also based on the statement made by Defendants in the Harkins memo. (*See* Defs.' Mot. Ex. G.) Under Michigan law, a

claim for defamation is comprised of four elements: "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication." *Rouch v. Enquirer & News,* 440 Mich. 238, 251, 487 N.W.2d 205 (1992). Plaintiff contends that the statement is false (she did not violate the LEIN/SOS policy), and Defendants admit that they issued the memo to the court's employees. (Pl.'s Reply 7; Pl.'s Supp. Br. Ex. A; Defs.' Mot. 9.)

Plaintiff argues that her claim survives summary judgment based on two defamation cases, which this Court finds to be directly on point. In *Sias v. General Motors Corp.,* 372 Mich. 542, 127 N.W.2d 357 (1964), the employer told the plaintiff's co-workers that the plaintiff's employment had been terminated for "misappropriation of company property," and the court upheld the verdict for the plaintiff. In *Patillo v. Equitable Life Assurance,* 199 Mich. App. 450, 502 N.W.2d 696 (1992), the employer told the plaintiff's co-workers that the plaintiff had been fired because of "insubordination," and the court held that the claim survived summary disposition. In the present case, the statement at issue in the Harkins memo and the circumstances surrounding its publication are sufficiently similar to *Sias* and *Patillo.* The Harkins memo states that Plaintiff was discharged for violation of the LEIN and/or SOS policy, which amounts to an accusation of insubordination or misuse of court property. Plaintiff offers evidence that the Harkins memo was distributed to her co-workers. The memo was addressed to "All Employees," and Defendants state that it was issued "to the employees of the 48th District Court" and "was on a subject matter that interested all the employees

...." (Defs.' Mot. 9, Ex. G.) Defendants' reply brief contends that the memo was issued to the court's employees on a "need to know basis," but they offer no evidence in support of this contention. (Defs.' Reply 5.) On summary judgment, the court must construe the evidence presented in a light most favorable to the nonmovant. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

Defendants argue that the Harkins memo enjoys a qualified privilege, because the statement "was not only true, but it was on a subject matter that interested all the employees to remind of the seriousness that the employer viewed violations of the policy ...." (Defs.' Mot. 9–10.) The Michigan Supreme Court rejected this line of argument in *Sias,* holding that a qualified privilege does not extend to statements made to "fellow employees" performing the same work as the plaintiff, who were not "supervisors, personnel department representatives, or company officials." 372 Mich. at 548, 127 N.W.2d 357. Defendants rely on *Gonyea v. Motor Parts Fed. Credit Union,* 192 Mich.App. 74, 480 N.W.2d 297 (1991), where the court recognized that a qualified privilege exists for statements made to "other employees whose duties interest them in the subject matter" of the statements. In that case, the employer had told the bookkeeper that the plaintiff was a thief, and the court held that the bookkeeper's position gave her an interest in the accusations against the plaintiff. *Id.* at 79, 480 N.W.2d 297. *Gonyea* is inapposite in the present case, however, where no evidence indicates that the distribution of the Harkins memo was limited to court employees whose duties interest them in Plaintiff's alleged misconduct.

This Court denies summary judgment on Plaintiff's defamation claim, as Defen-

dants have not shown the existence of a qualified privilege.

## III. CONCLUSION

Based on the preceding discussion, this Court GRANTS in part and DENIES in part Defendants' motion for summary judgment. Summary judgment is GRANTED on Plaintiff's § 1983 due process claim based on the liberty interest in reputation and good name. Summary judgment is DENIED on Plaintiff's wrongful discharge claim, § 1983 due process claim based on the property interest in continued employment, and defamation claim.

**IT IS SO ORDERED.**