JOHN BACON v. MICHIGAN CENTRAL R. R. CO.

*Libel by a corporation—Publication to agent—Privilege.*

1. A railroad company supplied certain of its agents with a tabulated list of employees who had been discharged, stating in parallel columns the name and occupation of the employee and under the heading "Why discharged" the reason. *Held,* where the reason given was "stealing," the statement was libelous, and its issue to agents was a publication.

2. Corporations, in Michigan, can be sued for libel.

3. The question whether a libel was not privileged cannot properly be raised in an appellate court after it has been excluded below by a ruling that publication has not been shown.

4. It is for the court to determine whether the subject matter of a libel and its author's interest in and relations to it, make it a privileged communication; but it is for the jury to decide as to his good faith, belief in the statement and actual malice.

5. Privilege is to be shown in an action for libel as a justification, after publication has been proved.

Error to Berrien.   (A. J. Smith, J.)   Oct. 8.—Nov. 19.

CASE.   Plaintiff brings error.   Reversed.

*Clapp & Bridgman* for appellant.   A railroad company can be sued for libel: 1 Redf. on Railways 540, 595 ; *Whitfield v. South East Ry Co.* El. Bl. & El. 115 ; *Phil., Wil. & Balt. R. R. Co. v. Quigley* 21 How. 202 ; circular reports of commercial agencies are not privileged communications: *Getting v. Foss* 3 C. & P. 160 ; *Sunderlin v. Bradstreet* 46 N. Y. 188 ; *Taylor v. Church* 4 Seld. 452 ; Odgers on Libel 212.

*Edwards & Stewart* for appellee.  Communications necessary to one's own interest are privileged:  Odgers on Libel 233;  Cooley on Torts 216;  *Washburne v. Cooke* 3 Den. 110;  *Knowles v. Peck* 42 Conn. 386;  *Lewis v. Chapman* 16 N. Y. 369;  *Van Wyck v. Aspinwall* 17 N. Y. 190.

CHAMPLIN, J.  Plaintiff brought an action against defendant for libel.  The defendant is a corporation operating a line of railroad between Detroit, Michigan, and Chicago in the state of Illinois.  It employs a large number of men in different capacities, and there are twenty-nine different places along the line of the road where agents are employed who have authority to employ men to perform services for the company.  In order to secure competent and reliable employees, and to prevent imposition from discharged employees being again employed upon another part of the road, the defendant makes and keeps what it calls a "discharge list," in which is entered monthly the names of such employees as are discharged during the current month, their occupation, and under the heading of "Why Discharged" the reason or cause of discharge.  Such lists are sent to each of the twenty-nine agents or heads of departments upon whom devolve duties touching the employment, supervision or selection of servants or employees of defendant.  The defendant regards the keeping and distribution of such discharge lists among its heads of departments as an essential and necessary method of prosecuting its business, and as a necessary safeguard to protect itself against the employment of inefficient and unfit persons that have been discharged on some other part of the line.

The plaintiff resided at Niles, on the line of defendant's road, and had worked for defendant four or five years, first as a mason and for the last two or three years as a carpenter.  About the 14th or 15th of November, 1882, he was at work for defendant at Michigan City, and rode from there to his home at Niles on the fast train.  This train has a dining car attached, and a passenger before arriving at Niles left his overcoat in his seat and went forward into the dining car.  Plaintiff claims that by mistake, when he got off at Niles, he

took the passenger's overcoat in place of his own, and went into the tool-shop and threw the coat upon the bench and did not go back to the shop until the morning of the second day afterwards, when Mr. Humphrey came in and asked if any of the men had taken a coat by mistake; that he replied to Humphrey, "Night before last I threw a coat on that bench; look at that;" and told Humphrey, "If that is the coat he had better put a tag on it and send it back, but that my coat was gone;" which he described, and Humphrey said it was in the baggage-room, and he went there and got it. Two or three days after that, he was discharged. The defendant showed that when the passenger reported the loss of his coat it instituted an investigation, and the assistant superintendent was informed by defendant's special agent that the coat was taken while the passenger was out to supper, and that an old coat was left in its place; that he sent one of his men to investigate, and the gentleman's coat was found at the residence of Mr. Bacon, at West Niles; that the statement of the special agent was to the effect that there was such a difference between the two coats that Bacon must have known that he had taken a coat not belonging to himself.

In the month of March following, the name of plaintiff was entered on the discharge list, which comprised the names of thirty in all, as follows;

"MICHIGAN CENTRAL RAILROAD COMPANY.

| *March.* | *Discharge List.* | 1882. |
| NAME. | OCCUPATION. | WHY DISCHARGED. |
| Bacon, John. | Carpenter. | Stealing." |

This list was sent between the first and fifth of April to the defendant's twenty-nine heads of departments above mentioned, in Michigan, Indiana and Illinois, one of which was sent to and received by G. W. Doliver, assistant roadmaster at Niles. This list was in his custody, and the only person who had access to his books was his clerk, Elon Lombard. No one ever applied to him to see the list, and he never showed it to any one. Plaintiff endeavored to ascertain the reason of his having been discharged. He inquired

of Mr. Palmer, a foreman in the employ of defendant, and asked him if it was on account of the coat, and he did not say whether it was or not. In April, 1882, plaintiff had a conversation with Lombard in Mr. Doliver's office about the matter, and he showed plaintiff the discharge list for the month of March, 1882 ; and plaintiff then brought this action. ·

The defendant pleaded the general issue and gave notice that it would insist in its defense and give evidence tending to show that the said several alleged libelous publications in the declaration mentioned are true. On the trial the plaintiff called Mr. Doliver as a witness, who at plaintiff's request produced the discharge list. Having shown the facts above narrated the plaintiff then offered the discharge list in evidence, which was objected to as irrelevant and immaterial. The circuit judge sustained the objection, on the ground that the plaintiff had not shown a publication. This ruling was excepted to.

The defendant offered no testimony and the circuit judge then charged the jury as follows: "This is an action for libel brought by the plaintiff against the defendant, charging him with a certain publication. The evidence introduced, or attempted to be introduced, I think does not sustain that proposition. Both parties having rested and there being no evidence before the jury that there was any publication, the only thing remaining for the jury to do is to bring in a verdict for the defendant." Exception was duly taken to this charge, and the jury rendered their verdict for defendant.

The only question presented by the record is, was there any evidence of publication of the alleged libel ? If so, it was error to take the case from the jury.

In considering this question, it must be borne in mind that the words alleged are actionable in themselves, and imputed malice if false, and it must be determined irrespective of any defense based upon the question of whether the writing was under the circumstances privileged. That defense would have been proper after a publication had been shown, and in justification of the act.

It has not been without much reluctance and against strong dissent that corporations have been held liable to actions for libel, the opposition being based mainly upon two grounds :

1st. That they are created for specified purposes, and libels composed and published by their officers or agents must necessarily be beyond the scope of the legitimate authority of such corporations, and therefore not binding upon them ;

2nd. Because malice, which is a necessary requisite in libel,. cannot be imputed to a corporation.

Since however, corporations have taken such common and important parts in the business of the country, and have been created for almost every conceivable purpose where an aggregation of capital can be employed to advantage, it has been considered to be more consonant with the principles of justice to hold them to a large measure of the accountability which attaches to individuals. It is well settled in this State that an action can be maintained against a corporation for libel.

The acts of the managing officers of the corporation in carrying on its affairs and managing its business are considered the acts of the corporation itself. No question is made upon this point, and it may be considered as conceded that the act of the superintendent in sending out these discharge lists to the agents of the corporation was the act of the corporation itself. But the argument is and the circuit judge so held, that the transmission of the libel from the superintendent to the twenty-nine heads of department in Michigan, Indiana and Illinois was only passing the libel from one agent of defendant to another agent of defendant, and it had never reached the hands or knowledge of a third person, but in fact remained in the possession of the composer..

This argument is wholly untenable. If a person compose a libel and send it to his agent, to be read by him, and it reaches its destination and is read by such agent, it is a sufficient publication to support the action. There are in this country railroad and telegraph corporations whose lines extend through many states and who employ many thousand agents. There are a great number of insurance companies

employing agencies in several states.   Can it be possible that these corporations possess an immunity to defame any person by sending such libel to every agent in their employment?   Why should they possess this immunity more than an individual employing a large number of agents?   Why should it be held a publication in one case and not in the other?   In my opinion every agent to whom this discharge list was delivered was a third person respecting this corporation and the plaintiff, and it constituted a publication of the libel.

The defendant presents a question to this Court which was not presented or ruled upon in the court below.   He has argued here that the communication, under the circumstances appearing in the evidence, was *privileged*, and therefore the question as to whether it was published has become and was quite immaterial.

I do not think it proper for us to consider this branch of the case presented by defendant's counsel, for the reason that the question of privilege was not brought before the court below ; if it had been, the plaintiff would have been entitled to introduce evidence to show express malice.   Although it is for the court to determine whether the subject-matter to which the libel relates, the interest of the author in it, or his relations to it, are such as make the communication privileged, yet the question of good faith, belief in the truth of the statement and the existence of actual malice are facts to be determined by the jury.   *Klinck v. Colby* 46 N. Y. 427 ; *Hamilton v. Eno* 81 N. Y. 116; *Adcock v. Marsh* 8 Ired. (N. C. L.) 361; *Hart v. Gumpach* L. R. 4 P. C. 439; *Fowles v. Bowen* 30 N. Y. 20; *Gassett v. Gilbert* 6 Gray 94.   The ruling of the court below in rejecting the discharge list as evidence, and holding that there has been no publication, foreclosed the plaintiff from the opportunity of introducing such proof.

The judgment must be reversed and a new trial granted.

The other Justices concurred.