# STATE OF MICHIGAN

# COURT OF APPEALS

SANFORD N. LAKIN and CECILIA J. LAKIN,

        Plaintiffs-Appellees,

v

SR. BARBARA RUND and ST. HUGO OF THE HILLS CATHOLIC CHURCH,

        Defendants-Appellants,

and

MSGR. ANTHONY TOCCO,

        Defendant.

FOR PUBLICATION
December 1, 2016
9:00 a.m.

No. 323695
Oakland Circuit Court
LC No. 2014-138683-NO

Before: BORRELLO, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

This is a defamation case arising out of a confrontation between plaintiff, Sanford N. Lakin, and defendant, Sister Barbara Rund, following a church service when Sanford was disappointed he was not permitted to serve as a lector. Sanford sought the intervention of defendant, Monsignor Anthony Tocco, and learned that Rund told Tocco that Sanford put a finger in her chest during the confrontation and also that Rund was afraid of Sanford. Plaintiffs contend that Rund's statement imputed the criminal offense of battery; therefore, it was defamatory per se. The trial court granted in part and denied in part defendants' motion for summary disposition, ruling that by stating that Sanford "put a finger" in her chest, Rund asserted that Sanford willfully and offensively touched her and thus implied that Sanford had committed a battery. The trial court ruled that because Rund's statement described a criminal battery committed by Sanford, plaintiffs pleaded a claim of defamation per se that did not require proof of special damages. This Court denied defendants' application for leave to appeal.[1] Our Supreme Court, on defendants' further application for leave to appeal, issued an order stating

---

[1] *Lakin v Rund*, unpublished order of the Court of Appeals, issued March 26, 2015 (Docket No. 323695).

that, in lieu of granting leave to appeal, it was remanding the case to this Court for consideration as on leave granted. *Lakin v Rund*, 499 Mich 860; 873 NW2d 590 (2016). The Court's order further stated:

> The Court of Appeals shall consider (1) whether publication of an allegedly false and defamatory statement imputing to another conduct constituting the criminal offense of battery is actionable irrespective of special harm, see e.g., *Mains v Whiting*, 87 Mich 172, 180 (1891); *Taylor v Kneeland*, 1 Doug 67, 72 (1843) (holding that words charging a person with a crime are not actionable per se unless the crime involves moral turpitude or would subject the person to an infamous punishment); and (2) whether the statement at issue in this case imputed to the plaintiff the criminal offense of battery. [*Id.*]

We address the second question first. We review de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(8). *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998). Such a motion tests the legal sufficiency of a claim and must be determined on the basis of the pleadings alone. *Id*. All factual allegations supporting the claim and any reasonable inferences that can be drawn from the allegations are accepted as true. *Id*. A motion under MCR 2.116(C)(8) should only be granted when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 262; 833 NW2d 331 (2013).

"A battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *People v Reeves*, 458 Mich 236, 240 n 4; 580 NW2d 433 (1998). It is not necessary that the touching cause an injury. *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011). Further, because an attempt to commit a battery will establish an assault, *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005), "every battery necessarily includes an assault because a battery is the very 'consummation of the assault.' " *Cameron*, 291 Mich App at 614 (citation omitted); see also *People v Terry*, 217 Mich App 660, 662; 553 NW2d 23 (1996). While the common law did not require proof of intent, Michigan requires proving the "intent to injure in order to establish an assault and battery." *People v Datema*, 448 Mich 585, 599; 533 NW2d 272 (1995). "The intent of the defendant may be established by circumstantial evidence." *Terry*, 217 Mich App at 663.

Plaintiffs allege that Rund stated that Sanford had "put a finger" in her chest. We conclude that this statement, viewed in light of the circumstances to which it related, imputed to Sanford the criminal offense of battery. See *Smith*, 231 Mich App at 258-259. Sanford's intent to engage in an offensive, intentional touching of Rund by putting his finger in her chest can be inferred by the circumstantial evidence. *Terry*, 217 Mich App at 663. The complaint describes a heated argument between Sanford and Rund regarding her decision to allow another individual to serve as lector during the preceding church service. While defendants claim that the statement merely described Sanford as gesturing with his hands, when we view the complaint in the light most favorable to plaintiffs, *Johnson v Pastoriza*, 491 Mich 417, 435; 818 NW2d 279 (2012), it describes Sanford as putting his finger into Rund's chest in order to make a point during an argument. Placing one's finger in the chest of another, especially a nun, during an argument, can reasonably be seen as an offensive touching. Indeed, that Rund reported to Tocco that she was fearful of Sanford in connection with relating the incident also leads to the fair inference that the

alleged touching was offensive to Rund. Therefore, we conclude that the trial court correctly ruled that Rund's statement imputed to Sanford the criminal offense of battery.

The more difficult question is "whether publication of an allegedly false and defamatory statement imputing to another conduct constituting the criminal offense of battery is actionable irrespective of special harm"? Whether a party has pleaded all the elements of a cause of action presents a question of law this Court reviews de novo. *In re Receiver of Venus Plaza*, 228 Mich App 357, 359-360; 579 NW2d 99 (1998).

The elements of a claim of defamation are:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. [*Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005).]

In *Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723, 727-728; 613 NW2d 378 (2000), this Court held that "words charging the commission of a crime are defamatory per se, and hence, injury to the reputation of the person defamed is presumed to the extent that the failure to prove damages is not a ground for dismissal." Indeed, the common-law principle that words imputing the commission of a crime constitute defamation per se was used as a reference point in MCL 600.2911(1), which codified the common-law principle that imputing lack of chastity was defamatory per se. See *Burden*, 240 Mich App at 728-729. MCL 600.2911(1) states: "Words imputing a lack of chastity to any female or male are actionable in themselves and subject the person who uttered or published them to a civil action for the slander in the same manner as the uttering or publishing of words imputing the commission of a criminal offense."

The issue presented in this case is whether defamation per se includes imputing the commission of every crime or "criminal offense," or whether it is limited to a smaller subset of crimes in accordance with the common law. With respect to MCL 600.2911(1), we note that our Supreme Court has held that "words and phrases that have acquired a unique meaning at common law are interpreted as having the same meaning when used in statutes dealing with the same subject." *Pulver v Dundee Cement Co*, 445 Mich 68, 75; 515 NW2d 728 (1994). Indeed, the Legislature instructs in MCL 8.3a, with respect to statutes, "technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." In addition, "when the Legislature codifies a judicially defined requirement [or term] without defining it itself, a logical conclusion is that the Legislature intended to adopt the judiciary's interpretation of that requirement [or term]. *Pulver*, 445 Mich at 75 (alteration added). Therefore, we conclude that what constitutes defamation per se with respect to imputing the commission of a crime or a criminal offense must be determined by looking to the common law.

Our Supreme Court directs our attention to "*Taylor v Kneeland*, 1 Doug 67, 72 (1843) (holding that words charging a person with a crime are not actionable per se unless the crime involves moral turpitude or would subject the person to an infamous punishment)[.]" *Lakin*, 499 Mich 860. In *Taylor*, the Court considered whether the imputation of embezzlement was actionable per se. *Taylor*, 1 Doug at 66, 72. The Court held that "words charging a person with

-3-

the embezzlement of goods are not actionable because the charge, if true, will not subject the party charged to an indictment for a crime involving moral turpitude, or subject him to an infamous punishment." *Id*. at 72 (citations and punctuation omitted). Four decades after *Taylor* was decided, in a case where the crime of murder was imputed, our Supreme Court, without citing any authority or discussing *Taylor*, opined that "false assertions, when they impute the commission of crime, are actionable . . . ." *Peoples v Detroit Post & Tribune Co*, 54 Mich 457, 462; 20 NW 528 (1884). That same year, the Court held that falsely charging a person with theft constituted defamation per se. *Bacon v Michigan Central R Co*, 55 Mich 224, 227; 21 NW 324 (1884). Again, the Court did not cite *Taylor* or any other authority, and did not discuss whether theft involved moral turpitude or would subject the plaintiff to an infamous punishment. *Id*.

Our Supreme Court also refers out attention to *Mains v Whiting*, 87 Mich 172, 180; 49 NW 559 (1891), in which the Court discussed four classes of "oral slander" that were actionable without having to show special damages, quoting *Pollard v Lyon*, 91 US 225, 226; 23 L Ed 308; 1 Otto 225 (1875). In *Mains*, the plaintiff was an attorney representing a client charged with embezzlement. *Mains*, 87 Mich at 173-175. The defendant was a witness for the prosecution and while being cross-examined by the plaintiff at a hearing on the case, stated, "You are the dirty sewer through which all the slums [sic] of this embezzlement have flowed," and "If that $20 had been turned over to you . . . the company would never have seen 20 cents of it." *Id*. at 172-173, 176-177. The trial court granted the defendant's motion to preclude presentation of evidence because the words did not impute a crime and special damages had not been alleged, so the court dismissed the case. *Id*. at 180. The Supreme Court reversed because the words alleged were actionable without special damages because they imputed a charge of dishonesty with respect to the plaintiff's profession as an attorney. *Id*. at 181. The Court determined that the "oral slander" fell within a category of words actionable without special damages: " 'Defamatory words falsely spoken of a party which prejudice such party in his or her profession or trade.' " *Mains*, 87 Mich at 180, quoting *Pollard*, 91 US at 226. The first category of slander actionable without proof of special damages was stated to be " '[w]ords falsely spoken of a person which impute to the party the commission of some criminal offense involving moral turpitude for which the party, if the charge is true, may be indicted and punished. ' " *Id*. Although dictum,[2] this part of the quote from *Pollard* in *Mains* reinforced the holding of *Taylor*.

Since *Mains* was decided, both our Supreme Court and this Court have issued inconsistent rulings regarding which accusations of criminal activity constitute defamation per se. In *Wilkerson v Carlo*, 101 Mich App 629, 632; 300 NW2d 658 (1980), this Court did not mention that a crime involve moral turpitude or infamous punishment when it stated in dictum that "[a]n accusation of a commission of a crime, as here, is defamatory per se and is actionable

---

[2] "Black's Law Dictionary (7th ed) defines obiter dictum as '[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive). ' " *People v Higeura*, 244 Mich App 429, 437; 625 NW2d 444 (2001).

without proof of special harm or loss of reputation." This dictum[3] was followed in *Burden* when this Court again stated without reference to the nature of the crime that "words charging the commission of a crime are defamatory per se." *Burden*, 240 Mich App at 727-728. Other cases have simply followed *Bacon* and ruled that theft constitutes defamation per se without analyzing whether theft involves moral turpitude or would subject the plaintiff to an infamous punishment. See *Jones v Sears, Roebuck & Co*, 459 F2d 584, 587 (CA 6, 1972) (applying Michigan law in diversity action); *Sias v Gen Motors Corp*, 372 Mich 542, 547; 127 NW2d 357 (1964); *Poledna v Bendix Aviation Corp*, 360 Mich 129, 137; 103 NW2d 789 (1960).

Despite these opinions, this Court has held in other proceedings that not all false accusations of criminal behavior in every circumstance will constitute defamation per se. *Kevorkian v Am Med Ass'n*, 237 Mich App 1, 6, 12-13; 602 NW2d 233 (1999). This Court stated that "we decline plaintiff's invitation to hold as a matter of law that all accusations of criminal activity are automatically defamatory . . . ." *Id*. at 13. Regarding the plaintiff, who was famous for his advocacy of assisted suicide, the Court stated that the "plaintiff's reputation in the community, if not the nation, is such that the effect of more people calling him either a murderer or a saint is *de minimis*." *Id*. at 12. This Court has more recently noted the holding of *Kevorkian* that "[n]ot all accusations of criminal activity are automatically defamatory." *Cooley Law Sch*, 300 Mich App at 268. So, case law since *Taylor* and *Mains* have not always clearly stated the common-law rule concerning when a false allegation of a criminal offense will constitute defamation per se.

Despite the inconsistent case law, our Supreme Court has recently reinforced that this Court "is bound to follow decisions by [our Supreme] Court except where those decisions have *clearly* been overruled or superseded, and *is not authorized to anticipatorily ignore our decisions where it determines that the foundations of a Supreme Court decision have been undermined*." *Associated Builders & Contractors v City of Lansing*, 499 Mich 177, 191-192; 880 NW2d 765 (2016) (emphasis in original). "[I]t is the Supreme Court's obligation to overrule or modify case law if it becomes obsolete, and until this Court takes such action, the Court of Appeals and all lower courts are bound by that authority." *Boyd v WG Wade Shows*, 443 Mich 515, 523; 505 NW2d 544 (1993), overruled on other grounds by *Karaczewski v Farbman Stein & Co*, 478 Mich 28, 30, 44; 732 NW2d 56 (2007), itself overruled in part by *Bezeau v Palace Sports & Entertainment, Inc*, 487 Mich 455; 795 NW2d 797 (2010). In *Taylor*, our Supreme Court held that words charging an individual with a crime only constitute defamation per se if the crime involves moral turpitude or would subject the person to an infamous punishment. *Taylor*, 1 Doug at 72. While the Supreme Court in *Peoples* did not mention the requirements of moral turpitude or infamous punishment, the crime alleged was the most serious felony, murder, and

---

[3] The accusation in *Wilkerson* was that the plaintiff, an owner and trainer of race horses, engaged in a race-fixing scheme. The statement not only alleged a criminal offense but also adversely affected the plaintiff's employment. *Wilkerson*, 101 Mich App at 631-634. The issue was whether to apply the one-year statute of limitations for defamation or the three-year tort limitations period for inference with business relations; the Court held the latter applied despite the defamatory nature of statements.

the Court did not clearly repudiate its earlier holding in *Taylor*. *Peoples*, 54 Mich at 462. Furthermore, seven years later, the Supreme Court in *Mains* reinforced the requirement when noting that defamation per se included false allegations of a crime involving "moral turpitude for which the party, if the charge is true, may be indicted and punished." *Mains*, 87 Mich at 180. Because *Taylor* has never been "clearly" overruled or superseded, it remains the controlling law in Michigan. *Associated Builders & Contractors*, 499 Mich at 191-192.

The question then becomes what constitutes moral turpitude and infamous punishment and whether battery falls within either of these categories. "Moral" is defined as "of or related to principles of right and wrong in behavior[.]" *Meriam-Webster's Collegiate Dictionary* (11th Ed). "Turpitude" is defined as "vile or base character" or a "vile or depraved act." *Random House Webster's College Dictionary* (1995). Black's Law Dictionary (10th Ed), defines "moral turpitude" as "[c]onduct that is contrary to justice, honesty, or morality; esp. and act that demonstrates depravity." In the context of attorney discipline in Michigan, "moral turpitude" has been defined as involving "fraud, deceit, and intentional dishonesty for purposes of personal gain." *Matter of Grimes*, 414 Mich 483, 492; 326 NW2d 380 (1982) (citation omitted).

Other jurisdictions have given similar definitions to moral turpitude, stressing societal mores, ethics, and honesty. Texas has defined moral turpitude as "anything done knowingly contrary to justice, honesty, principle, or good morals." *Searcy v State Bar of Texas*, 604 SW2d 256, 258 (Tex Civ App, 1980). A crime involves moral turpitude in Ohio when "the act denounced by the statute offends the generally accepted moral code of mankind." *State v Deer*, 129 NE2d 667, 669 (Ohio Com Pl, 1955). New York defines moral turpitude as "the quality of a crime involving grave infringement of the moral sentiment of the community . . . ." *People v Ferguson*, 55 Misc 2d 711, 715; 286 NYS2d 976 (1968) (citation omitted).

Consistent with these definitions, the majority of courts across the country have held that neither a simple assault nor a criminal battery involves moral turpitude. California courts when examining the elements of the offenses have held that simple assault, simple battery, and even felony battery, are not offenses involving moral turpitude. *People v Thomas*, 206 Cal App 3d 689, 694; 254 Cal Rptr 15 (1988). The Supreme Court of South Carolina was unwilling to hold that even aggravated assault and battery invariably constitutes a crime involving moral turpitude. *State v Bailey*, 275 SC 444, 446; 272 SE2d 439 (1980). Alabama courts have held that "battery does not involve moral turpitude. Moral turpitude signifies an inherent quality of baseness, vileness, depravity. Assaults and batteries are frequently the result of transient ebullitions of passion, to which a high order of men are liable, and do not necessarily involve any inherent element of moral turpitude." *Johnson v State*, 629 So 2d 708, 710 (Ala Crim App, 1993) (citation omitted). Georgia courts also do not recognize simple battery as a crime involving moral turpitude. *Jabaley v Mitchell*, 201 Ga App 477; 411 SE2d 545 (1991).

We note that at common law an assault and battery was not inherently dangerous but required "an intent to do 'wrong'" and was considered an offense that was "malum in se". *Datema*, 448 Mich at 599. At common law an offense was considered malum in se when it is " 'condemned as wrong in and of itself by every sense of common decency and good morals . . . .' " *Id*. at 599 n 15, quoting *People v Townsend*, 214 Mich 267, 272; 183 NW 177 (1921). Still, considering the definitions of moral turpitude in Michigan and other jurisdictions, the persuasive authority in other jurisdictions that the offense of simple battery does not involve moral

turpitude, and that no directly contrary Michigan authority exists, we hold that the crime of battery in Michigan does not involve moral turpitude.

Consequently, we must conclude that a false accusation of simple battery will only constitute defamation per se if the crime of battery subjects plaintiff to an "infamous punishment." *Taylor*, 1 Doug at 72. Defendants assert that a battery conviction cannot subject an individual to an infamous punishment because a battery is a misdemeanor. This argument has merit. "Whether a crime is infamous or not is not determined by the nature of the offense, but by the consequences to the individual by the punishment prescribed for such offense." *Attorney Gen ex rel O'Hara v Montgomery*, 275 Mich 504, 513; 267 NW 550 (1936) (citations omitted). "Crimes subject to infamous punishments are infamous crimes, and the term 'infamous crime' means any crime punishable by imprisonment in the State prison." *Id*., citing several United States Supreme Court cases, including *Ex parte Wilson*, 114 US 417; 5 S Ct 935; 29 L Ed 89 (1885). This definition of "infamous crime" corresponds to the statutory definitions of crimes classified as felonies. Under Michigan's Penal Code, a crime is either a "felony" or a "misdemeanor," MCL 750.6. A "felony" is "an offense for which the offender, on conviction may be punished by death, or by imprisonment in state prison." MCL 750.7. A "misdemeanor" is "any act or omission, not a felony, is punishable according to law, by a fine, penalty or forfeiture, and imprisonment," MCL 750.8, or "any act [that] is prohibited by . . . statute, and no penalty for the violation of such statute is imposed[,]" MCL750.9. Similarly, under the Code of Criminal Procedure, "felony" is "a violation of a penal law of this state for which the offender, upon conviction, may be punished by death or by imprisonment for more than 1 year or an offense expressly designated by law to be a felony." MCL 761.1(g). Furthermore, with certain exceptions, the Code of Criminal Procedure provides that a criminal sentence of "imprisonment for a maximum of 1 year or less, the commitment or sentence shall be to the county jail of the county in which the person was convicted and not to a state penal institution." MCL 769.28. Therefore, under these definitions, an "infamous crime" is a felony for which conviction may result in a prison sentence, while crimes that may be punished by imprisonment of one year or less are, in general, misdemeanors and not infamous crimes.[4]

Subsequently, our Supreme Court discussed the meaning of "infamous crime" in the context of whether a witness could be impeached with a prior misdemeanor conviction. *People v*

---

[4] At common law, the designation of an offense as a felony did not always follow the possible penalty. See e.g., *Drennan v People*, 10 Mich 169, 175 (1861), holding that statutory definitions control only statutory crimes and not whether an offense at common law was a felony or misdemeanor. In *Drennan*, the Court held that the larceny of goods of any value was a felony at common law, which justified the defendant's arrest without possession of a warrant. *Id*. at 177.

In addition, the statutory definitions are not free of conflict. See *People* v *Smith*, 423 Mich 427, 437-439; 378 NW2d 384 (1985), discussing the differences between the definitions in the Penal Code and those of the Code of Criminal Procedure. The *Smith* Court held that offenses that the Legislature labeled "misdemeanors" but provided for imprisonment of up to two years were " 'felonies' for purposes of the habitual-offender, probation, and consecutive sentencing statutes" under the Code of Criminal Procedure. *Id*. at 445.

*Renno*, 392 Mich 45; 219 NW2d 422 (1974). The *Renno* Court addressed whether the trial court erred by allowing the prosecutor to question the defendant concerning the details of his prior municipal ordinance convictions of being drunk and disorderly. *Id*. at 50-51. The Court discussed that at common law, persons convicted of infamous crimes were disqualified from testifying but that certain statutes[5] removed this disability while retaining the ability of a party to impeach a witness with a conviction for an infamous crime. *Id*. at 52-53. The *Renno* Court in discussing the type of crimes that were infamous at common law, quoted *People v Hanrahan*, 75 Mich 611, 620-621, 42 NW 1124 (1889), which noted that constitutional safeguards applied when "on account of the nature of the punishment which may be inflicted, [a criminal offense] is classed as Infamous . . . ." *Renno*, 392 Mich at 53-54. The Court also reviewed *Ex parte Wilson*, 114 US at 429, which held that "a crime punishable by imprisonment for a term of years at hard labor is an infamous crime," as used in the Fifth Amendment. The part of the *Wilson* case that the *Renno* Court discussed noted that two kinds of infamous crimes existed at common law: those " 'respecting the mode of punishment' " and those " 'respecting the future credibility of the delinquent.' " *Renno*, 392 Mich at 54, quoting *Wilson*, 114 US at 422. Those infamous crimes affecting credibility " 'depended upon the character of his crime, and not upon the nature of his punishment. ' " *Id*. The latter category of infamous crimes included, "treason, felony, forgery, and crimes . . . such as perjury, subornation of perjury, suppression of testimony by bribery, conspiring to accuse one of crime, or to procure the absence of a witness," but did not include "private cheats, such as the obtaining of goods by false pretenses, [sic] or the uttering of counterfeit coin or forged securities." *Renno*, 392 Mich at 54, quoting *Wilson*, 114 US at 423. Turning to the municipal ordinance violations at issue, the *Renno* Court held that they were not the sort that would disqualify a witness at common law; consequently, the Court "prohibit[ed] the further use of municipal ordinance or misdemeanor convictions used by the prosecution *solely for impeachment purposes*." *Id*. at 55 (emphasis in original).

From *Renno*, and the authority it discusses, we learn that the meaning of "infamous" at common law may vary depending on the context in which used. In the present case, we must start with the instruction of *Taylor*, 1 Doug at 72, that a false accusation of a crime is only defamatory per se if it involves "moral turpitude, or subject him to *an infamous punishment*." Thus, our focus must be on infamous crimes made so by the *punishment imposed*. In that regard, our Supreme Court held in *Montgomery*, 275 Mich at 513, that "the term 'infamous crime' means any crime punishable by imprisonment in the state prison." This definition is generally consistent with the Michigan's statutory definitions of "felony," although certain crimes that the Legislature has labeled "misdemeanor" may also be considered a felony for purposes of the Code of Criminal Procedure and result in a prison sentence.[6] Thus, the holding of *Renno* concerning the credibility aspect of "infamous" is consistent with the holdings of both *Taylor* and *Montgomery* which concern "infamous crimes" rendered so by the punishment that may be imposed. Because our Supreme Court has never "clearly" overruled *Montgomery*, nor has it been superseded, it remains the controlling law in Michigan. *Associated Builders & Contractors*, 499 Mich at 191-192.

---

[5] See MCL 600.2158 and MCL 600.2159.

[6] See note 4, *supra*.

MCL 750.81 states that "a person who assaults or assaults and batters an individual, if no other punishment is prescribed by law, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days." If, however, a person is convicted of assault and battery he or she may only be incarcerated in a county jail. See MCL 769.28. Applying our Supreme Court's holding in *Taylor* and *Montgomery*, we conclude that a conviction for battery would not subject an individual if convicted to an "infamous punishment," *Montgomery*, 275 Mich at 513, such that a false accusation of battery would not constitute defamation per se, *Taylor*, 1 Doug at 72.

We reverse the trial court's order denying summary disposition to defendants and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Riordan